## 𝔚𝔂𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

HIGGINBOTHAM v. MAY AND AL.

SAME v. BANK OF PRINCETON AND AL.

JULY 26th, 1893.

1. EQUITABLE JURISDICTION AND RELIEF—*Cancellation of Satisfaction of Judgment—Attorneys.*—A suit to cancel satisfaction of judgment, on the ground that it was procured by fraud or mistake, may be maintained by the attorneys who obtained the judgment.

2. IDEM—*Judgment Creditors—Enforcement of Lien.*—A suit to enforce lien of judgment, if found subsisting in suit to cancel satisfaction thereof, may, during pendency of latter suit, be maintained by the owners of the judgment, in the nature of a cross bill.

3. PAYMENT BY NOTE—*Case at bar.*—Holder of note sending it to attorneys with instructions to renew, if possible, but otherwise to sue, and after judgment is obtained receiving from them new note and money, with intimation that if a small balance is soon paid they will receive it in satisfaction of the judgment, which holder accepts and announces the balance due, but doing nothing further for five years, thereby ratifies the act of the attorneys in endorsing the judgment as "satisfied."

Appeal from decree of circuit court of Tazewell county, entered August 26, 1892, in a cause wherein A. J. & S. D. May were complainants and J. B. Higginbotham and T. W. Wingo were defendants, and in another cause wherein the Bank of Princeton was complainant and said Higginbotham and Wingo were defendants. From the decree in favor of the complainants in both suits, which were heard together, the defendant, Higginbotham, appealed. Opinion states the case.

*Fulton & Fulton* and *Chapman & Gillespie,* for appellant.

*Henry & Graham*, for appellees.

HINTON, J., delivered the opinion of the court.

The first of these suits was brought by the Messrs. May, as attorneys, to have cancelled an endorsement of the satisfaction of a judgment of the Bank of Princeton against the appellants, J. B. Higginbotham and T. W. Wingo, upon the ground that said endorsement had been caused by a misrepresentation of the said Higginbotham, or by mistake.

The second suit was brought by the Bank of Princeton against the said Higginbotham and others to enforce the lien of the judgment referred to in the first named cause.

There was a demurrer to the bill in each cause, which was properly overruled. The objects of the suits were distinct, and the simplest and most convenient method for having the rights of the respective parties determined was the one which has been adopted, namely, to have two suits and have them heard together. Had the object of the Messrs. May been to have the entry of satisfaction stricken off for fraud or mistake it might have been accomplished by motion to the court. 2 Black on Judgments, sec. 1016. But here the Messrs. May desired to do more than this. They wished not only to have the entry expunged, if the court should be of opinion that it was procured by fraud or caused by mistake, but they also desired that the loss should be placed where it ought properly to fall. A suit in equity was therefore the only proceeding by which all this could be done, and A. J. & S. J. May, who were personally interested in the result, were competent to bring it. See Story on Agency, sec. 416.

As to the second suit it is to all intents and purposes a cross bill, and should be so treated in this case. A cross bill, *ex vi terminorum*, implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defend-

ants in the same suit, or against both, touching the matters in question in the original bill. A bill of this kind is usually brought either (1) to obtain a necessary discovery of facts in aid of the defence to the original bill, or (2) to obtain full relief to all parties, touching the matters of the original bill. Story's Eq. Pl., § 389. Here the object was to obtain full relief to all parties, especially to the Bank of Princeton, by enforcing the lien of the judgment it it should be found to be subsisting. A proper case for a court of equity was therefore disclosed by each bill, and the demurrers were, therefore, as we have before said, properly overruled.

This brings us to consider the case upon the merits.

It appears by the record that on the 31st day of July, 1884, T. W. Wingo made his negotiable note for $500 at ninety days, which was indorsed, for accommodation, by the payee, J. B. Higginbotham, and discounted by the Bank of Princeton, of Princeton, West Virginia. After maturity of the note, the bank having been notified by Higginbotham to collect the note, sent it to A. J. & S. D. May, lawyers at Tazewell, Va., for collection, stating at the same time that they preferred to renew the note, but that if this was not done they should bring suit. At first Higginbotham declined to further indorse for Wingo and renew the note, and an action at law was therefore brought on the note, and a judgment was rendered therein at the November term, 1885, of the circuit court of Tazewell county. This judgment was for the sum of $500 with interest thereon from the 1st day of October, 1884, and $7 65 costs.

Shortly after this judgment was rendered, Higginbotham decided to again endorse for said Wingo, so as to enable him to pay off said judgment; and accordingly a new note for $500, negotiable and payable at said Bank of Princeton, dated on the 1st day of November, 1885, and falling due on the 1st day of May, 1886, was made by said Wingo and endorsed by said Higginbotham.

This note was made in the law office of A. J. & S. D. May, the attorneys for the bank, and at the time the said attorneys made a calculation of the amount which, together with the new note, the bank would be willing to receive in satisfaction of the judgment, and Higginbotham then gave his check for $38 80, which, with the amount in bank to the credit of Wingo, it was supposed would be sufficient to meet the demands of the bank. The attorneys immediately forwarded the note and check in a letter addressed to the president of the bank, the body of which reads as follows:

"We got judgment on the note of T. W. Wingo, endorsed by J. B. Higginbotham, for $500, due 1st November, 1884. After the judgment was rendered, Wingo and Higginbotham agreed to settle it by new note and payment of interest and costs. Enclosed find their note for $500 and check for $38 80, which leaves $38 32 due the bank on interest, and $8 28 cost. Mr. Wingo promised to pay the balance several days ago, but has not done so; doubtless he will this week; if he does not, we will sue out execution on the judgment and collect it. Below find statement."

The statement is as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Principal of note due 1st Nov. '84, | - | | - | | - | | | $500 | 00 |
| Interest from Nov. 1, '84, to May 1, '85, | | - | | - | | | | 25 | 00 |
| Interest from May 1, '85, to Nov. 1, '85, | | - | | - | | | | 26 | 66 |
| Interest from Nov. 1st to May 1, 1886, | | | - | | - | | | 25 | 46 |
| | | | | | | | | $577 | 12 |
| Cr. check, | - | - | - | - | - | - | - | 38 | 80 |
| | | | | | | | | $538 | 32 |
| Note due May 1, '86, | - | - | - | - | - | - | | 500 | 00 |
| Bank on interest still due, | - | - | - | - | - | | | $38 | 32 |

The bank, by its cashier, at once answered said letter, in which it said: "I credit T. W. Wingo $38 80, and as he has $37 58 to his credit, paid before the note went into your hands, he will only have to pay 74 cents and costs of suit to renew his note."

Soon after this letter was received by said attorneys for the bank, Higginbotham paid them the balance due on the judgment, and said attorneys marked the judgment, at the instance of Higginbotham, as they claim, "satisfied" on the lien docket of the county of Tazewell.

The balance of the judgment, after delivery of the note and the payment of the $38 80, was paid to one J. D. Alexander, upon an order drawn by A. J. May on J. B. Higginbotham, and with the order was attached on account of certain items due from Higginbotham, and among them is "balance upon judgment, $12," the reference admittedly being to the judgment of the Bank of Princeton against Wingo, mentioned above. The balance of the judgment having been thus paid, Higginbotham seems to have heard nothing more of the matter until he was notified in the summer of 1891, by the attorneys for the bank, that the bank claimed that the judgment had not been settled and that he should pay off the same; and Higginbotham declining to do this, A. J. & S. D. May instituted their suit, alleging that the entry of satisfaction had been obtained by misrepresentation and fraud on the part of Higginbotham.

Shortly after the suit was brought by A. J. & S. D. May, the Bank of Princeton filed its bill, whereupon Higginbotham offered a plea setting forth the pendency of the first above-styled suit, which the court refused to allow him to file, doubtless because it took the view we have just announced, that the second bill was essentially a cross-bill, and was required in order that full relief might be obtained by all parties touching the matters of the original bill.

Now, from what has been said, it is clear that it was understood between A. J. & S. D. May and Wingo and Higginbotham that the new note was to be received as payment of the principal of the judgment, and it was doubtless a consciousness of this agreement which induced the attorneys to make the entry on the judgment lien docket, "Satisfied, 1888, and money paid bank," which was but a short way of saying that the note and money received in satisfaction of the judgment had been paid over to the bank, at least so much thereof as the bank was entitled to. Under the general authority of an attorney, the Messrs. May had authority to collect the judgment, and when collected, it became their duty to mark the judgment satisfied; and while they had under this general authority no right to collect the judgment in anything but money, unless by special authority; yet if, acting under their general authority, they have done so, and their act has been ratified, it binds the principal. *Smith* v. *Lambert*, 7 Gratt., 138; *Johnson* v. *Gibbons*, 27 Gratt., 632.

Has this arrangement of their attorneys been ratified by the Bank of Princeton? Immediately after the judgment was obtained, Higginbotham agreed to pay off the judgment in the mode which has been indicated, and in pursuance of this agreement, he executed a note for $500 and gave his check for $38 80. This new note and money was at once forwarded to the Bank of Princeton, together with a full statement and an intimation too plain to be misunderstood, that the balance, if paid in a short time, would be received in settlement or discharge of the judgment.

Now, what did the bank do? Did it make the slightest objection to the proposed action of its attorney? No; on the contrary, it credited the principal debtor with the amount paid, entered the note on the books of the bank to the credit of the maker, T. W. Wingo, and held it for five years, without one word of dissent. It had previously indicated its objec-

tion to a suit except as a dernier resort.   By its silence it now gives its tacit approval to the extinguishment of the judgment.   What the bank wanted was not a judgment, but a new note upon which it might continue to get interest at the rate of 10 per centum.   The agreement to accept the new note, and the payment of all the usurious, especially the back, interest, and the costs, in full settlement of the debt, which was fully brought home to the bank by the letter from their attorneys, which has been heretofore set out in this opinion, constitute as complete a novation of the contract as it was possible to make, and the acceptance of the note, crediting it on the account of T. W. Wingo, and their failure to intimate the slightest objection to what their attorneys had done and were going to do (for the seventy-four cents and costs were not collected until afterwards), accompanied as it was by a silence which lasted until the note was out of date, must certainly be deemed a ratification of the transaction, if any conduct can possibly amount to a ratification.   In *Law* v. *Crop*, 1 Black's R., 539, Mr. Justice Greer, speaking for the whole court, said : " When informed by his agent of what he had done, if the principal did not choose to affirm the act, it was his duty to give immediate information of his repudiation.   He cannot, by holding his peace and apparent acquiescence, have the benefit of the contract if it should turn out to be profitable, and retain a right to repudiate it if otherwise.   The principal must, therefore, when informed, reject within a reasonable time, or be deemed to adopt by acquiescence."   These remarks are as applicable to this case as to that.   *Johnson* v. *Gibbons*, 27 Gratt., 636 ; *Coffman* v. *Bruffy*, 26 Gratt., 698.

Upon the whole case it is clear that the judgment has been paid off, and that the Messrs. May were fully justified in marking the same " satisfied," and that the only rights the Bank of Princeton has, if any, which it can now enforce, must be upon the note.   We attach no importance to the fact that Higgin-

botham thought, or pretended to think, that he had paid this note, for even if his claim was knowingly unfounded, it could not affect the result, which had been determined and fixed by what preceded.

The decree of the circuit court of Tazewell is wholly erroneous and must be reversed and annulled, and a decree must be entered in accordance with the views herein expressed.

DECREE REVERSED.