PRESENT:  All the Justices

CAROL SMITH, IN HER CAPACITY AS EXECUTRIX OF THE
ESTATE OF EVELYN B. SMITH AND IN HER CAPACITY AS
TRUSTEE OF THE EVELYN B. SMITH INTER VIVOS
REVOCABLE TRUST

                                          OPINION BY
v.  Record No. 091470          JUSTICE CYNTHIA D. KINSER
                                         June 10, 2010

JEAN MOUNTJOY, IN HER CAPACITY AS EXECUTRIX
OF THE ESTATE OF THEODORE M. SMITH

              FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                        Jeffrey W. Parker, Judge


     This appeal presents two primary issues: whether certain
transactions undertaken by an attorney-in-fact constituted a
gift, which the attorney-in-fact was not authorized to make, and
if so, whether the principal nevertheless ratified the agent's
acts.  Because we conclude, inter alia, that the transactions at
issue were a gift and that ratification did not occur, we will
affirm the circuit court's judgment.

                    MATERIAL FACTS AND PROCEEDINGS

     The relevant facts are undisputed, as the circuit court
ruled on cross motions for summary judgment.  See Rule 3:20.
Theodore M. Smith (Theodore) and Evelyn B. Smith (Evelyn) were
married in 1946.  In May 2006, after experiencing serious health
problems, Theodore executed a Durable Power of Attorney (DPOA)
naming Evelyn as his attorney-in-fact.

Theodore's DPOA generally authorized Evelyn to act "for [Theodore] and in [his] name . . . and on [his] behalf, and for [his] use and benefit to do and transact all and every kind of business whatsoever in [his] name as fully as though [he] was acting[.]"  Specifically, Evelyn was granted the authority, inter alia, "[t]o sell, lease, purchase, exchange, and acquire . . . any real or personal property whatsoever" as well as "repair, maintain, improve, manage, insure, rent, lease, sell, convey, subject to liens, [or] mortgage" any of the same. However, the DPOA contained no express authority to make gifts.

Acting as Theodore's attorney-in-fact but unbeknownst to him, Evelyn executed an instrument on May 23, 2007, creating "The Theodore M. Smith Inter Vivos Revocable Trust" (Theodore's Trust).  At the same time, she executed a separate document establishing "The Evelyn B. Smith Inter Vivos Revocable Trust" (Evelyn's Trust).  Evelyn was named as the "initial" trustee for both trusts, but their respective provisions were not "mirror images."  Theodore's Trust provided that upon his death, the trust's assets were to be distributed outright to Evelyn if she survived him.  In the event Evelyn did not survive Theodore, certain assets were to be distributed to Jean Mountjoy (Mountjoy) and others, and the remaining corpus of Theodore's

2

Trust was to be distributed to Carol Smith (Carol), or to Carrie Smith Parret if Carol did not survive Theodore.[1]

In contrast, Evelyn's Trust provided that upon her death, Theodore, if he survived her, was to receive the net income from the trust's assets and such principal as the trustee deemed "necessary" or "proper" for Theodore's "support, maintenance and medical care." Upon Theodore's death, or if he did not survive Evelyn, certain assets were to be distributed to Mountjoy and others, and the remaining corpus of the trust was to be distributed to Carol, or to Carrie Smith Parret if Carol did not survive Evelyn.

On the same day that she created both trusts, Evelyn, acting as Theodore's attorney-in-fact, and also in her individual capacity, executed two "deeds of gift" conveying to the trustee of each trust a one-half interest in six parcels of real estate (the Properties), which the Smiths until then had held as tenants by the entirety with rights of survivorship. The deeds changed ownership of the Properties to tenants in common. Evelyn died unexpectedly in July 2007, without informing Theodore of these transactions.

---

[1] Mountjoy is Theodore's sister. Although Theodore and Carol share the same surname, they are not consanguineously related. Carol is Evelyn's niece.

Soon after Evelyn's death, Theodore discovered the transactions and, on September 6, 2007, executed, "pursuant to Article X (Reserved Rights)" of Theodore's Trust, a "Notice of Termination" (the Notice) to revoke and terminate his trust in its entirety.  The Notice directed Carol, who was then acting as the substitute trustee of Theodore's Trust, to deliver "all assets" of the trust to Theodore, and revoked "all powers heretofore granted to the [t]rustee by virtue of the [t]rust."[2]

Theodore next filed an action against Carol, in her capacity as substitute trustee of Theodore's Trust and as executrix of Evelyn's estate.  In a second amended complaint, Theodore sought, inter alia, a declaration that Evelyn's creation of Theodore's Trust and conveyance of the Properties to that trust and Evelyn's Trust, "which thereby terminated the tenancies by the entirety and voided Theodore's survivorship interests, to be beyond the powers granted to [Evelyn] in the [DPOA] and/or was not authorized by" him.  Theodore further requested that he be declared "the sole owner" of the one-half interest in the Properties held by Evelyn's Trust.

On September 26, 2008, prior to filing his second amended complaint, Theodore, acting through counsel, made "a demand

_____

[2] Each trust document named Carol as substitute trustee in the event Evelyn died or could not otherwise serve as trustee.

4

pursuant to [paragraph A of] ARTICLE VI" of Evelyn's Trust, for a distribution of income. That provision provides:

> For so long as [Theodore] shall live, [the trustee of Evelyn's Trust] shall pay to [Theodore's] legal representative, for the benefit of [Theodore], all of the net income of [Evelyn's] Trust Fund, in convenient installments but no less frequently than annually.

Theodore also requested under paragraph B of the same article of Evelyn's Trust "as much of the principal of [Evelyn's] Trust Fund as [Evelyn's trustee], exercising such sole and absolute discretion, shall deem necessary or proper for [Theodore's] reasonable support, maintenance and medical care." Theodore attached "schedules of medical expenses for round the clock care," totaling $106,932.00, in support of his request for a distribution from the principal of Evelyn's Trust. The demand also noted that improvements had been made to one of the Properties "that is owned [one-half] by Theodore Smith and [one-half] by [Evelyn's] Trust."

Theodore died on November 20, 2008, two days after filing the second amended complaint. The circuit court subsequently entered an order substituting Mountjoy, in her capacity as executrix of Theodore's estate, as the party plaintiff.

Both Mountjoy and Carol filed motions for summary judgment. At a hearing before the circuit court, Mountjoy contended that Theodore's DPOA did not give Evelyn the power to sever the Smiths' tenancy by the entirety interests in the Properties, as

5

those actions "constituted gifts to herself" because "there was no consideration given to" Theodore, and Evelyn "received the benefit." Carol, conversely, argued that the severance of the Smiths' tenancy by the entirety interests was supported by consideration, and thus was not a gift because "they each . . . suffer[ed] a detriment or a gain . . . . They both exchanged their right of survivorship." Carol further argued that Theodore's revocation of his trust pursuant to its terms and later demand for distributions from Evelyn's Trust constituted ratification of the transactions undertaken by Evelyn under the DPOA.

In a letter opinion, the circuit court concluded that because "[t]here is no specific language in the DPOA [that] authorizes Evelyn to set up an estate plan for Theodore containing a trust benefiting Evelyn[,]" her creation of Theodore's Trust was " 'not authorized by the power under which [s]he act[ed],' " rendering the act " 'a nullity.' " (Citation omitted.) The court also found that Theodore did not ratify Evelyn's actions; "[o]n the contrary, he promptly moved to protect his property rights in light of her unauthorized actions." Thus, the circuit court granted partial summary judgment in favor of Mountjoy, holding "that [Theodore's] Trust is void and of no effect" and, further, "invalidating the conveyance of the [P]roperties" to both trusts.

6

Carol filed a motion for reconsideration, seeking clarification of the circuit court's ruling.  She argued that Evelyn "took no unauthorized actions under the DPOA," citing deposition testimony of Mountjoy wherein she allegedly acknowledged that Evelyn had "authority to transfer the couple's properties."  Mountjoy opposed the motion, arguing, inter alia, that the deeds constituted gifts that were not authorized by the DPOA, thus entitling Theodore, as the then-surviving spouse, and now his estate, to sole ownership of the Properties.

After hearing argument on the motion, the circuit court concluded that no consideration passed for the severance of the Smiths' tenancy by the entirety interests and conveyance of one-half interest in the Properties to each trust and that the transactions were therefore gifts.  The court further concluded that Evelyn "did [not] have the power to make a gift of real estate," noting that Carol's counsel did not "suggest that [the DPOA] authorized" a gift.  In its final order, the circuit court held that the "recorded deeds . . . purporting to convey the interests of [Theodore and Evelyn] in the . . . Properties . . . , are void and of no effect, and, consequently[,] fee simple title to the . . . Properties continued to be held by [Theodore and Evelyn] as tenants by the entireties until

7

[Evelyn's] death . . . , at which time fee simple title vested exclusively in [Theodore]."[3]  Carol now appeals.

ANALYSIS

As previously noted, the primary issues raised by Carol's assignments of error concern whether the severance of the parties' tenancy by the entirety interests and conveyance of one-half interest in each of the Properties to the trustee of Evelyn's Trust was a gift[4] and, if so, whether Theodore, nevertheless, ratified Evelyn's acts.  Carol also challenges the circuit court's refusal to consider Mountjoy's proffered deposition testimony.

As Carol acknowledges on brief, the facts establishing the transactions at issue are undisputed; therefore, whether those transactions constituted a gift is a question of law.  As such,

_____

[3] In a separate order, the circuit court granted Carol's motion to intervene in her capacity as substitute trustee of Evelyn's Trust, adding her as a party defendant.  Carol was initially named as a defendant only in her capacity as executrix of Evelyn's estate and as substitute trustee of Theodore's Trust.

[4] Carol does not assign error to the circuit court's holding that Evelyn did not have the power and authority under the DPOA to make a gift of real property.  Thus, that issue is not before us.  See Rule 5:17(c).

We note, however, that the General Assembly recently enacted the Uniform Power of Attorney Act, future Code §§ 26-71.01 through -74.03, which is set to become effective July 1, 2010.  2010 Acts chs. 455, 632.  It is not necessary to address the applicability of that act to resolve the issues in this appeal.

8

we review the circuit court's resolution of that issue de novo. Oraee v. Breeding, 270 Va. 488, 494, 621 S.E.2d 48, 50 (2005).

We have long defined "[a] gift . . . as a contract without a consideration." Ott v. L&J Holdings, LLC, 275 Va. 182, 188, 654 S.E.2d 902, 905 (2008) (citing Spooner v. Hilbish, 92 Va. 333, 341, 23 S.E. 751, 753 (1895)). Consideration may arise from " '[a]ny act done at the defendant's request, and for his convenience, or at the inconvenience of the plaintiff.' " Looney v. Belcher, 169 Va. 160, 167, 192 S.E. 891, 893 (1937) (citation omitted). " 'Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made.' " Dulany Foods, Inc. v. Ayers, 220 Va. 502, 511, 260 S.E.2d 196, 202 (1979) (quoting Brewer v. Bank of Danville, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961)).

Carol contends that the transactions were supported by consideration because "as a matter of law[,] the exchange of the couple's entireties interests constituted a sufficient exchange for consideration." According to Carol, "[e]xchanging" their mutual tenancy by the entirety interests in the Properties "for equal and opposite rights of a co-tenant must, . . . by definition, constitute an exchange for value." The fallacy with Carol's position is that the severance of the parties' tenancy by the entirety interests and conveyance of one-half interests

9

to the respective trusts were not in exchange for "equal and opposite rights."

Review of the pertinent provisions of the two trusts demonstrates that the transactions at issue did not result in aligning ownership rights and obligations in the manner asserted by Carol. Theodore's Trust provided that, upon Theodore's death and in the event Evelyn survived him, its assets were to be paid and distributed "to [Evelyn], outright and free of trust," unless she elected otherwise, presumably for tax purposes. However, in the event that Evelyn predeceased Theodore – what in fact occurred – Theodore was not entitled to full and outright ownership of the assets of Evelyn's Trust. Instead, he was merely to receive periodic distributions of income and principal, the latter limited to payments the "Trustee, exercising such sole and absolute discretion, shall deem necessary or proper for [Theodore's] reasonable support, maintenance and medical care." Upon Theodore's death in the event Evelyn did not survive him, Evelyn's heirs, i.e., Carol, or Carrie Smith Parret if Carol did not survive Theodore, neither of whom were consanguineously related to Theodore, received the bulk of the assets held by Theodore's Trust. And the same individuals also received the greater part of the

assets of Evelyn's Trust upon the death of both Theodore and Evelyn.[5]

Thus, we hold that no consideration passed to Theodore in exchange for severing the tenancy by the entirety interests and conveying a one-half interest in each of the Properties to the trustee of Evelyn's Trust.  While both Evelyn and Theodore relinquished the right of survivorship appurtenant to holding real property as tenants by the entirety, the complete transactions conferred a benefit to Evelyn and/or her heirs that she did not have when the Properties were held as tenants by the entirety.  With no corresponding benefit to Theodore, the disparate provisions of the two trusts allowed Evelyn, along with the trustee of Evelyn's Trust, or her heirs, eventually to obtain fee simple ownership of the Properties, irrespective of whether she or Theodore died first.  That scenario — in which Evelyn and the trustee of her trust, or her heirs, would obtain ownership of the Properties — could not have occurred when the Properties were held as tenants by the entirety, unless Theodore predeceased Evelyn.  As the transactions conferred a benefit to Evelyn and only a detriment to Theodore, we conclude, contrary

---

[5] While the beneficiaries under Theodore's Trust were the same beneficiaries as those under Evelyn's Trust, Theodore's heir, Mountjoy, received a substantially smaller portion of the two trusts' combined assets than Evelyn's heirs, Carol and Carrie Smith Parret.

11

to Carol's assertion, that the transactions did not confer "equal and opposite rights" to Evelyn and Theodore. Instead, Evelyn, acting as Theodore's attorney-in-fact, made a gift to her trust.

This conclusion is supported by our decision in Ott. There, a wife, acting pursuant to her husband's power of attorney, established a limited liability company in which she and her husband were the sole members. 275 Va. at 185, 654 S.E.2d at 904. The husband's membership interest was established at 80 percent and the wife's at 20 percent. Id. Those respective membership interests represented each spouse's interest in the whole of three parcels of real estate owned by the husband and wife as tenants by the entirety. Id. at 185, 654 S.E.2d at 903-04. In a deed of gift, the wife then conveyed those particular parcels to the limited liability company. Id. at 185-86, 654 S.E.2d at 904.

The question on appeal was whether that deed exceeded the wife's authority as her husband's attorney-in-fact. Id. at 184, 654 S.E.2d at 903. The power of attorney granted the wife the power, inter alia, "to sell and convey real property, to enter into binding contracts[,] to manage [her husband's] business affairs[, and] to make gifts," but not to herself. Id. at 184-85, 654 S.E.2d at 903. The trial court concluded that the conveyance was not a gift, despite the deed's caption, but

rather that it was given for valuable consideration. Id. at 186, 654 S.E.2d at 904. The trial court reached that conclusion based on its factual findings that "the transfer of the property was undertaken for legitimate business reasons and that [the husband and wife] each received benefits, including possible future tax benefits, commensurate with their respective percentage interests, without any self-dealing on [the wife's] part." Id. at 189, 654 S.E.2d at 906. We affirmed the trial court's judgment, holding that the transaction at issue was within the powers granted to the wife under her husband's power of attorney. Id.

As previously explained, no such similar exchange of mutual benefit (or detriment) was effected by the transactions involving the Properties at issue. Theodore did not receive a benefit commensurate with his interest in the Properties. Unlike Ott, the facts here do not show that the transactions were supported by consideration. And, while not controlling, the two deeds here were captioned as "deeds of gift" and cited the statutory exemption provision for deeds of gift. See Code § 58.1-811(D). Therefore, the circuit court did not err in finding that Evelyn, acting as Theodore's attorney-in-fact, made a gift to her trust and, in doing so, exceeded her authority under the DPOA.

13

We now turn to the issue concerning whether Theodore ratified Evelyn's acts.[6]  "A principal is bound by his agent's previously unauthorized act if he ratifies the act by accepting its benefits with full knowledge of the relevant facts, or, if upon learning of the act, he fails to promptly disavow it." Kilby v. Pickurel, 240 Va. 271, 275, 396 S.E.2d 666, 668 (1990) (internal citations omitted).  If a " 'principal, with knowledge of all the facts, adopts or acquiesces in the acts done under an assumed agency, he cannot be heard afterwards to impeach them under pretense that they were done without authority.' " Winston v. Gordon, 115 Va. 899, 907, 80 S.E. 756, 760 (1914) (citation omitted).  And, when a principal, after being informed, fails to disavow the act, "he makes it his own." Id.; accord Coastal Pharm. Co. v. Goldman, 213 Va. 831, 839, 195 S.E.2d 848, 854 (1973).  Any act of disavowal must occur " 'within a reasonable time.' " Higginbotham v. May, 90 Va. 233, 239, 17 S.E. 941, 943 (1893) (citation omitted).

Carol alleges Theodore ratified the transactions undertaken by Evelyn as his attorney-in-fact by terminating Theodore's Trust, pursuant to its terms, in September 2007, and by

---

[6] Mountjoy asserts that the issue of ratification is waived because Carol did not plead such as an affirmative defense.  The circuit court, however, decided the issue, and Mountjoy does not assign cross-error claiming that the issue was not properly before the circuit court.  See Rule 5:18(b).

14

demanding a distribution of income and principal from Evelyn's Trust in September 2008.  According to Carol, the termination of Theodore's Trust in accordance with its provisions evidenced a choice by Theodore "to recognize the result of the [d]eeds and the severance of the couple's entireties interests in the . . . Properties," resulting in Theodore's "tak[ing] personal possession of his . . . half interests in the . . . Properties." Instead of repudiating Evelyn's actions and taking steps to restore the status quo ante, Theodore made an "informed decision . . . to recognize the existence of his trust, and the Trustee's then-existing rights and powers thereunder and to follow a course of action which his wife had empowered him to take in the trust document itself."  Filing this action, Carol maintains, was "merely an after-the-fact attempt to avoid the trust, the existence and fruits of which he had long since accepted."

Carol's argument is without merit.  To characterize Theodore's termination of his trust, in accordance with its terms, as accepting the benefits of his wife's acts is misguided.  Theodore did not "adopt or acquiesce" to the creation of his trust by utilizing its provisions to terminate it.  Instead, upon learning of Evelyn's acts, he promptly – within two weeks of her death – disavowed those acts by terminating his trust.  That termination cannot also be viewed as an adoption of the acts taken by Evelyn under the DPOA.

15

Furthermore, by filing this action, he took steps to disavow Evelyn's severance of the parties' tenancy by the entirety interests in the Properties.

Similarly, Theodore, by demanding a distribution of income and principal from Evelyn's Trust, did not "adopt or acquiesce" in Evelyn's acts establishing his trust and severing the parties' tenancy by the entirety interests. Theodore had no basis upon which to challenge Evelyn's creation of her trust, which contained assets other than the Properties at issue, and, by its terms, he was entitled to income and a distribution of principal under certain circumstances. In sum, Theodore did not "act[] in such a manner as to unmistakably indicate that he intend[ed] to avail himself of the benefits of" the actions taken by Evelyn under the DPOA. Piedmont Mt. Airy Guano Co. v. Buchanan, 146 Va. 617, 625, 131 S.E. 793, 795 (1926). Thus, we conclude that the circuit court properly held that Theodore did not ratify Evelyn's acts.

Finally, Carol argues that the circuit court erred in refusing to consider the proffered deposition of Mountjoy in opposition to Mountjoy's motion for summary judgment. As both parties filed motions seeking summary judgment, the deposition was not offered just to oppose such a motion. And, Mountjoy objected to the use of the deposition. Thus, we conclude that the circuit court did not abuse its discretion. See Code

16

§ 8.01-420; Rule 3:20; Lloyd v. Kime, 275 Va. 98, 107, 654 S.E.2d 563, 568 (2008).

## CONCLUSION

For these reasons, we will affirm the judgment of the circuit court.[7]

Affirmed.

---

[7] In light of our conclusion, it is not necessary to address Carol's remaining assignment of error.