COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia

PUBLISHED

KEVIN GLEN MONDS

v.        Record No. 1458-17-1

LAURA MARIE MONDS

OPINION BY
JUDGE RANDOLPH A. BEALES
MAY 8, 2018

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

(Peter V. Chiusano; Abrons, Chiusano & Sceviour, P.L.L.C., on
brief), for appellant.  Appellant submitting on brief.

Jennifer B. Shupert (Shupert Chaing, on briefs), for appellee.

Kevin Glen Monds ("husband") appeals the decision of the Circuit Court of the City of

Virginia Beach ("circuit court"), made at a contempt proceeding, that a check he made payable

to Laura Marie Monds ("wife") was a gift to the parties' son.  Husband argues the circuit court

"erred and exceeded its authority when it found that [husband] was not in contempt and

dismissed the show cause, but then ordered a sanction, that [husband] pay an additional $10,000

to [wife]."  He also contends that the circuit court erred "when it ruled that the $10,000 payment

to [wife] was a gift."

I. BACKGROUND

On appeal, we are required to view the facts in the light most favorable to wife because

she was the prevailing party in the circuit court.  See Wright v. Wright, 61 Va. App. 432, 451,

737 S.E.2d 519, 528 (2013).  So viewed, the evidence shows that husband and wife were

married on March 5, 1995.  They had two children, Zachary Monds ("Zach"), born in 1997 (and

an adult at the time of the litigation that led to this appeal), and a daughter, born in 2002.

The parties separated on July 11, 2012, and entered into a separation agreement on June 20, 2016 (the "Agreement"). The Agreement provided that, beginning June 1, 2016, husband would pay wife child support of "$445.00 per month, by direct deposit into Wife's bank account with the deposit due and paid into her account on the 1st of each month." In consideration of her waiver of spousal support, the Agreement provided that husband would pay wife an equitable distribution award according to the following schedule: $25,000 at the time of the signing of the Agreement; $75,000 upon the entry of the final divorce decree; and the balance of $100,000 within six months of the date of the entry of the final divorce decree. The Agreement was "ratified, affirmed, and incorporated, but not merged, into and made a part of" the final divorce decree on August 30, 2016.

On March 9, 2017, wife filed a petition and affidavit for rule to show cause alleging that husband violated the Agreement and final divorce decree by failing to pay her the $100,000 within six months. The petition also alleged that husband had failed to pay child support since December 2016. The circuit court issued an order to show cause on the same day.

The parties appeared before the circuit court on June 2, 2017. At the beginning of the hearing, wife's counsel alerted the circuit court that the case involved "a possible gifting issue." She claimed that, following wife's filing of the petition and affidavit for rule to show cause, husband paid the child support and most of the equitable distribution award.[1] However, wife's counsel argued that husband still owed wife $10,000 of the $100,000 equitable distribution

---

[1] It is undisputed that husband made the following deposits into wife's bank account: $10,445 on November 29, 2016; $10,000 on January 27, 2017; $10,000 on March 9, 2017; $10,000 on March 29, 2017; $30,000 on April 4, 2017; and $34,895 on April 7, 2017. These payments total $105,340 – $100,000 in equitable distribution and $5,340 in child support. At the hearing, counsel for wife informed the trial judge that husband "paid one lump sum to pay the child support off after we filed the show cause." We presume that wife's counsel was arguing that the payment made on March 9, 2017 – the same day the petition and affidavit for rule to show cause was filed – included the lump-sum payment for child support for the year.

award because, although husband wrote a check payable to wife for that amount, that $10,000 was actually a gift to the parties' adult son, Zach, to allow him to pay off certain medical bills.

At the hearing, wife testified that, beginning in the middle of January 2017, she started exchanging texts and emails with husband regarding unpaid child support. According to wife, at that time, husband had paid child support for December 2016 – but not yet for January 2017. Wife also testified that her communications with husband included some references to medical bills for Zach, who had suffered a broken ankle while uninsured in December 2016.[2] Specifically, in a January 26, 2017 email to husband, wife stated, "The final decree states the child support has to be an automatic deposit. You refuse to that and now aren't paying. I'm trying not to file anything but you are making impossible. I'm doing everything I can to make sure Zach medical bills are paid since he didn't have insurance." She also testified that she sent other texts to husband regarding the medical bills.

Following these communications, wife became aware that, on January 27, 2017, husband deposited a $10,000 check into her bank account. Wife testified that the account was in her name as well as in her mother's name, but that Zach was "linked in" to all of her accounts. Wife stated that she believed that the check was for Zach, although a photograph of the check, introduced at the hearing, showed husband had written wife's name on the payee line of the check, designating wife as the person to whom the check should be paid. The photograph also showed wife's name on the deposit slip on the line provided for the name of the account owner. Zach's name was written on the check's memorandum line. Wife testified that husband did not tell her "anything about that check" – not even the amount – prior to making the deposit, except

_____

[2] Zach was over the age of 18 at the time he broke his ankle. There is no dispute between the parties that husband was *not* legally obligated to pay for any of Zach's uncovered medical expenses, given that Zach was then an adult.

- 3 -

that he "kept on saying he was going to make it." She also testified that she had received one previous check for $10,000 from husband toward his $100,000 equitable distribution obligation.[3]

Wife testified that, while the entire $10,000 husband deposited on January 27, 2017 was still in her account, she and Zach had plans for using that money. She explained that Zach was transferring to a new college, and the money would be used to buy him a new car and to pay for his rent and other expenses. When asked if Zach's medical bills had been or were being taken care of as well, wife testified that they still owed approximately $3,000 to a medical provider.

After wife's testimony, husband's counsel moved to strike, claiming that there had been no delivery of the check to Zach and, therefore, no gift. The circuit court found that wife "hasn't accepted it yet, [the money is] still sitting in her account."

On cross-examination, wife initially denied having discussions with husband about problems he was having selling a house and the potential delay in payments that might cause. However, she did not deny sending husband the following text message: "I wanted to work w you for the last payment cuz I know sues house still hasn't sold. But it's kinda hard when u act the way u act!! PS aren't OUR kids gorgeous?????" She also admitted to sending a text message to husband on January 12, 2017, stating, in part, "I had told Zach he could have the money fr u this month for his medical bills." However, she claimed at trial that the money she was referring to was the child support obligation – not the equitable distribution payment.

Zach was called as a witness for his mother, and he testified that, in January 2017, he received a text message from his father containing a photograph of the check. The photograph depicted wife's name on the payee line and Zach's name in the memorandum line. The text accompanying the photograph stated, "Deposit made today . . . PLEASE READ UR MOMS TX

---

[3] The check wife received prior to the January 27, 2017 check was the November 29, 2016 check which was actually for $10,445. The extra $445 was presumably for child support for December 2016.

- 4 -

TO ME . . . . . I HOPE SHES TELLING THE TRUTH . . . BUT DOUBT IT . . . LOVE YAA." Zach testified that he understood the text to mean that his father was sending him a check for $10,000. Zach stated that he received another text from his father on February 21, 2017. That text stated, "Hey zach i wud like to help u with ur bills . . . . even if ur mom gave u the 10GRAND LIKE SHE SAID SHE wud . . . . . LETS talk . . we're missen some great times . . . PLEASE." He also stated that he received a voicemail from his father in January[4] in which his father explained that the $10,000 was for him. He stated that his father "never specified that it was for child support or not, just that it was my money." Zach also testified that he believed this money was gifted to him and that he had access to his mother's account where the money was deposited. On cross-examination, Zach admitted that, in his father's voicemail, his father stated that *Zach's mother* was going to give Zach the $10,000.

Husband testified that he intended for the $10,000 to be a payment made pursuant to the terms of the Agreement and final divorce decree. He stated that he had communicated with wife and told her that he was working as hard as he could to pay her the total distribution of her money by the due date – and that he was working to sell two houses to come up with the money.

Husband stated that he wrote Zach's name on the memorandum line of the check because wife "had told him that she was going to give him the money, and I just wanted him to be aware that I had made a direct deposit into her account and that she probably was not going to be truthful and give him the money."

After the testimony, the circuit court made the following findings:

> First off, it's a legitimate dispute between the two of them. It's kind of hard to understand, when you have this total lack of trust between the two of them, for you to - - all this litigation that has occurred, you don't communicate with each other except by text

---

[4] Zach's testimony is unclear on the date. He stated, "The message came through January - - April, I believe." Because it is undisputed that the check was deposited in January, we presume Zach meant that he received the voicemail in January.

and e-mail, that if, in a convoluted way, that the child support was paid in advance and all these things, the court feels and finds, after reviewing the documents and the credibility issues on both sides, the court feels the defendant is not in contempt. However, the court feels that he does still owe the $10,000 for the equitable distribution.

The court is going to order that he pay the 10,000 within 60 days hereof. Since it's a legitimate dispute, the way the court looks at it, the court is not going to award any attorneys' fees. Everybody's exception is noted.

The final order states, "[T]he Court does not find the Defendant in contempt of Court and [wife's] Show Cause is dismissed." It also states, "[T]he Court finds that the $10,000.00 payment by [husband] dated January 27, 2017 and payable to [wife] with the notation 'Zach' in the memo line is a gift."

## II. ANALYSIS

### A. This Court's Jurisdiction to Hear this Appeal

It is first necessary for us to address wife's argument that this Court lacks jurisdiction to hear this appeal. Relying on Jenkins v. Mehra, 281 Va. 37, 704 S.E.2d 577 (2011), wife argues that this Court lacks the authority to hear appeals from a circuit court's ruling refusing to find a party in contempt.

In Jenkins, Fairfax County Department of Public Works and Environmental Services Director Jimmie D. Jenkins filed a complaint against Mr. and Mrs. Mehra, alleging that certain conditions on their real property violated various Fairfax County ordinances. Id. at 40-41, 704 S.E.2d at 579. The circuit court entered a consent order which declared the Mehras' real property in violation of the ordinances, and directed them to bring their real property into compliance. Id. When the Mehras failed to comply, Jenkins filed a motion for a rule to show cause why they should not be held in contempt for violating the order. Id. at 41, 704 S.E.2d at 579. At the show cause hearing, the Mehras stipulated that they had not performed as required by the consent order. However, they explained that their failure to perform was the result of

Mr. Mehra's losing his job, which left them without the money to remedy the conditions. Id. As a result, the trial court dismissed the show cause, finding that, although the Mehras failed to comply with the terms of the order, "the violation [was] not willful and therefore not contemptuous." Id.

Jenkins appealed the decision, and the Supreme Court, *sua sponte*, directed the parties to address "whether, under the facts of this case, the appellant [Jenkins] has standing to appeal a judgment of the circuit court declining to hold a party in civil contempt . . . ." Id. at 42, 704 S.E.2d at 580. Holding that it lacked jurisdiction to hear the appeal, the Court began its analysis by noting that "[t]he right of appellate review from a finding of contempt or a refusal to find contempt did not exist at all at common law." Id. at 43, 704 S.E.2d at 580 (quoting Tyler v. Baltimore Cnty., 259 A.2d 307, 310 (Md. 1969)).

Under the common law, no appellate review of "a finding of contempt or the refusal to find contempt was justified as necessary" because:

> the power of the . . . courts over contempt is omnipotent, and its exercise is not to be enquired into by any other tribunal. This is the great bulwark established by the common law for the protection of courts of justice, and for the maintenance of their dignity, authority and efficiency, and neither in England nor in the United States has this unrestricted power been seriously questioned.

Id. at 43-44, 704 S.E.2d at 581 (quoting Ex parte Senior, 19 So. 652, 653 (Fla. 1896)) (internal quotation marks omitted)). The Court then considered whether the General Assembly had abrogated this established common law rule, and concluded that "the provisions of Code § 19.2-318 . . . abrogated the common law rule only with regard to judgments *for* contempt" – not judgments by a trial court refusing to find persons in contempt. Id. at 47, 704 S.E.2d at 582.

As held in the Supreme Court's decision in Jenkins and in this Court's decision in Newton v. Jones, 66 Va. App. 20, 781 S.E.2d 759 (2016) (holding Code §§ 19.2-318 and

- 7 -

17.1-405 do not provide the Court of Appeals with appellate jurisdiction to review cases when a circuit court refuses to find a party in contempt and dismisses a rule to show cause), we agree that the common law prohibition in Virginia against an appeal of a trial court's refusal to find a party in contempt has not been abrogated by the General Assembly. See Code § 1-200 ("The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly."). However, the case currently before us does not fall within the common law prohibition because it is *not* an appeal from the circuit court's finding of no contempt. Rather, it is an appeal of an order requiring husband to pay $10,000 for equitable distribution based on the circuit court's authority to enforce the parties' Agreement as incorporated by the final divorce decree. In Jenkins, unlike in the present case, the *appellant* assigned error to the circuit court's failure to find the *appellee*s in contempt, which would have required the Supreme Court to violate the common law rule that "the power of the . . . courts over contempt is omnipotent, and its exercise is not to be enquired into by any other tribunal." See Jenkins, 281 Va. at 44, 704 S.E.2d at 581. Here, however, husband, who is the appellant, unsurprisingly does not ask this Court to review the circuit court's decision *not* to hold him in contempt. Rather, husband assigns error to the circuit court's order that he pay wife $10,000 in equitable distribution based on its interpretation of the parties' Agreement and final divorce decree – despite the fact the circuit court did not find him in contempt. In reviewing this case on appeal, given these facts, there is simply no need for us to analyze or inquire into the circuit court's ruling pertaining to its finding of no contempt. Therefore, the rule articulated in Jenkins and Newton does not apply to this case, and this Court has jurisdiction to hear this appeal pursuant to Code § 17.1-405.

Furthermore, while we would not have jurisdiction to hear this appeal if wife were appealing the circuit court's finding of no contempt, it would be ironic indeed if husband were not permitted to appeal the award made pursuant to the circuit court's authority to enforce the final divorce decree simply because the circuit court found that husband was not in contempt during the same proceeding. Such a ruling would allow a shrewd party to create a situation in which he could obtain a substantial, non-appealable award by choosing to file a petition for a rule to show cause. Then, if the circuit court found the defendant not in contempt and yet ordered him to pay a substantial award, the defendant could not even appeal that substantial award that he was ordered to pay. The Supreme Court's decision in Jenkins does not tie the hands of the appellate courts so as to require such an illogical and impractical result as would occur in cases such as this one. Therefore, because we have jurisdiction to hear this appeal, we must consider each of husband's assignments of error.

B. The Circuit Court's Authority to Award Wife $10,000 After Dismissing the Show Cause

In his first assignment of error, husband argues that the circuit court's authority to order a remedy ended when it ruled that husband was not in contempt and dismissed the show cause. Husband's argument fails to recognize, however, that regardless of the outcome of the contempt proceeding, the circuit court possessed the statutory authority to enforce the equitable distribution award incorporated into the final divorce decree.

Monetary awards arising from divorce cases are unique, and circuit courts are provided with significant statutory authority to enforce those awards. "Monetary awards that arise in the context of a divorce differ from other monetary judgments. They compensate a party for his or her rights, equities, and interests in marital property." Kahn v. McNicholas, 67 Va. App. 215, 226, 795 S.E.2d 485, 490 (2017). "When a monetary award is included in a separation or property settlement agreement, it oftentimes also provides compensation for the waiver of a

- 9 -

party's right to receive spousal support." Id. at 226-27, 795 S.E.2d at 490. As a result of the unusual nature of monetary awards arising out of divorce, trial courts are vested with the "continuing authority and jurisdiction to make *any additional orders necessary to effectuate and enforce any order* entered" under Code § 20-107.3(K) governing equitable distribution of divorcing parties. Code § 20-107.3(K) (emphasis added). Based on the circuit court's express statutory authority, we hold that the circuit court had the authority to interpret the final divorce decree (including the incorporated Agreement, pursuant to Code § 20-109.1), to determine whether the parties' obligations in the final divorce decree had been met, and to make any additional orders necessary to effectuate and enforce its terms. See also Green v. Robertson, No. 0380-17-4, 2018 Va. App. LEXIS 74, at *9 (Va. Ct. App. Mar. 20, 2018) (holding that the trial court possessed the authority to enforce the parties' separation agreement incorporated into their final divorce decree and to award wife relief, even after finding husband not in contempt).

This Court addressed precisely this issue in Shoup v. Shoup, 31 Va. App. 621, 525 S.E.2d 61 (2000). In that case, Mr. Shoup filed a petition and rule to show cause against Mrs. Shoup for her failure to comply with terms of a modification agreement made to the parties' initial separation agreement. Id. at 624, 525 S.E.2d at 63. Both the initial separation agreement and the modification agreement were incorporated into the parties' divorce decree. Id. The trial court ruled that Mrs. Shoup was not in contempt, but interpreted the modification agreement as requiring Mrs. Shoup to pay Mr. Shoup $46,154 plus interest.[5] Id. at 624-25, 525 S.E.2d at 63. Mrs. Shoup appealed, arguing, in part, that "when the trial judge ruled she was not in contempt, the trial judge lacked the authority to grant any relief" to Mr. Shoup. Id. at 627-28, 525 S.E.2d at

---

[5] The Shoup case also illustrates the potentially troubling outcome that would result if we were to conclude that we lacked jurisdiction to hear all appeals where the trial court found no contempt, but then ordered a monetary award to be paid. If we lacked jurisdiction to hear the appeal of the monetary award in such cases, Mrs. Shoup would have been without recourse to appeal the trial court's award of $46,154 plus interest.

64. This Court disagreed, and held "that the trial judge had the authority to enforce the personal obligations of the parties created by the agreements, which were incorporated into the court's decrees" – even after the trial court found Mrs. Shoup not in contempt. Id. at 628, 525 S.E.2d at 65. Similarly, in this case, the circuit court was permitted to enforce the parties' obligations under the incorporated Agreement at the contempt hearing.

### C. Notice Provided by the Petition and Affidavit for Rule to Show Cause

Similar to his argument that the circuit court lacked the authority to make an award after finding him not in contempt, husband also argues that the relief awarded by the circuit court was made in error because the affidavit and petition for rule to show cause did not provide him with sufficient notice of the issues to be addressed at the proceeding. He argues that the circuit court could not exercise its authority to enforce the divorce decree pursuant to Code § 20-107.3(K) because "this matter was not before the court on an enforcement basis when it received evidence and made its ruling. Rather, the sole question before the court . . . was whether [husband] should be held in contempt for his alleged failure to comply with the court order."

In addition to the authority we have cited *supra* that expressly allows a trial court to award monetary relief in contempt proceedings, the petition and affidavit for rule to show cause in this case sufficiently notified husband that wife was seeking to enforce the Agreement's equitable distribution award. See also M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 703, 568 S.E.2d 391, 396 (2002) ("[W]e have previously held that a trial court may issue a money judgment on a rule to show cause." (citing Shoup, 31 Va. App. at 627-28, 525 S.E.2d at 64-65)). The petition and affidavit for rule to show cause stated that the final decree of divorce required husband to pay wife $100,000 within six months of the date of the entry of the final decree and alleged that husband "violated the Order as he has not paid the $100,000.00 to [wife]." In her prayer for relief, wife requested that an order be issued "compelling [husband] to

- 11 -

show cause why he should not be held in contempt *and compelled to comply with this Court's orders . . . .*" (Emphasis added). The relief wife requested – that she be awarded the remainder of the equitable distribution payment through the enforcement of the final divorce decree – was in addition to her request that husband be held in contempt. Therefore, wife's pleading was sufficient to notify husband that the hearing would address the enforcement of the Agreement.

D. The Circuit Court's Ruling that the $10,000 was a Gift

In husband's second assignment of error, he argues that the circuit court "erred when it ruled that the $10,000 payment to [wife] was a gift."

The Supreme Court has held that the issue of whether a transaction constituted a gift is a question of law that we review *de novo* on appeal. Smith v. Mountjoy, 280 Va. 46, 53, 694 S.E.2d 598, 602 (2010). "It is well settled that the law does not presume a gift and where a donee claims title to personal property by virtue of a gift *inter vivos*, the burden of proof rests upon him to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence." Rust v. Phillips, 208 Va. 573, 578, 159 S.E.2d 628, 631 (1968) (quoting Grace v. Virginia Trust Co., 150 Va. 56, 142 S.E. 378 (1928)). Therefore, in order to establish the existence of a gift, wife was required to prove, by clear and convincing evidence "(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Robinson v. Robinson, 46 Va. App. 652, 665, 621 S.E.2d 147, 154 (2005) (*en banc*) (quoting Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d, 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996)).

Furthermore "[a] clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite to a gift *inter vivos*. And this intention must be inconsistent with any other theory." Matthews v. Hanson, 145 Va. 614, 619, 134 S.E. 568, 569-70 (1926).

Although Zach was an adult at the time the check was written, it is undisputed that husband wrote wife's name – not Zach's – on the payee line of the check. It is also undisputed that he wrote wife's name on the line for the account holder on the deposit slip before depositing it into *her* account. In addition, although wife testified that Zach was "linked in" to all her accounts, there was no evidence presented to show that husband was aware that Zach was "linked in" to the account in which the check was deposited, nor was there evidence presented to explain why husband would have written a check he intended to give to his son to wife rather than writing it out directly to his adult child. The notion that husband would have entrusted wife and his ex-mother-in-law – the joint owners of the account – with these funds instead of paying them directly to his adult child is particularly unbelievable in light of the circuit court's finding that there was a "total lack of trust between the two of them [husband and wife]."

The evidence also showed, and the trial judge acknowledged, that the state of husband's financial affairs was inconsistent with any intention by husband to make a gift.[6] Viewing the evidence in the light most favorable to the wife, as we must because she prevailed below, then at the time husband "gifted" this $10,000 to Zach, husband still owed child support for January

---

[6] The circuit court judge and husband engaged in the following colloquy:

> THE COURT:  - - if you were having these financial issues, as you described, why would you arbitrarily just give your son a gift for $10,000?

> [HUSBAND]:  I did not. I gave it to her as the distribution. It don't say - - it says right here - -

> THE COURT:  I know, I know, but- - so why did you write "Zach" on the check?

> [HUSBAND]:  So he could be aware that his mother was receiving the distributions that she said she would pass to him.

> THE COURT:  Okay. All right. Thank you.

2017. Wife testified that she sent husband several text messages and emails requesting that he pay the child support. She also presented evidence that she had previously threatened to file a show cause against him by way of a letter dated October 12, 2016. Husband testified that he understood the potential repercussions of failing to pay child support and that he feared losing his driver's license and even being put in jail if he did not timely pay his child support. Thus, at the time husband wrote the check to wife on January 27, 2017, the evidence showed that wife had made repeated requests for payments, that husband understood and feared the consequences of not paying child support, and that the required upcoming $100,000 lump sum payment was due by March 1, 2017. In short, at the time husband deposited the $10,000 check at issue into wife's account, husband was already a month behind on his child support payments, and he had just over a month left to pay wife an additional $90,000 to meet his obligation to make the $100,000 lump sum equitable distribution payment. Therefore, even viewing the facts in the light most favorable to wife, as we must, this evidence is completely at odds with husband's purported intention to simply make a $10,000 gift to Zach at that time despite all of the other legal obligations to pay wife that were then staring husband in the face.

In addition, the text messages exchanged between husband and Zach indicate that husband was aware that he was paying this money to wife with only the *hope* that *she* would then choose to give this money to Zach. On the day husband made the deposit, he texted Zach, stating, "Deposit made today . . . PLEASE READ UR MOMS TX TO ME . . . . . I HOPE SHES TELLING THE TRUTH . . . BUT DOUBT IT . . . LOVE YAA." This text message is consistent with husband's testimony that he hoped wife would give the money to their son, Zach, but he feared that she would not. Husband also texted Zach on February 21, 2017, telling his son, "Hey zach i wud like to help u with ur bills . . . . even if ur mom gave u the 10GRAND LIKE SHE SAID SHE wud . . . . ." The message shows husband's recognition that the money

- 14 -

belonged to wife and that it was her choice whether to give the money to Zach. Even Zach's testimony supports this conclusion. Zach was asked, "The voicemail message that you received, isn't it true that your father said that your mother was giving you the $10,000?" Zach responded, "Yes."

Although "[i]ntent is a question to be determined by the fact finder," Cirrito v. Cirrito, 44 Va. App. 287, 305, 605 S.E.2d 268, 276 (2004), the circuit court here was plainly wrong in finding the required clear and convincing evidence of husband's donative intent.[7] The evidence presented at the hearing before the circuit court was more consistent with husband's argument that he intended to pay wife $10,000 pursuant to the terms of the Agreement – with the *hope* that wife would give the money to their son – than it was with the theory that husband intended this money to be an outright gift to Zach.

"[D]onative intent must be supported by a more convincing offer of proof." Delanoy v. Delanoy, No. 2457-13-2, 2014 Va. App. LEXIS 424, at *34 (Va. Ct. App. Dec. 30, 2014). Here, the mere fact that husband wrote Zach's name on the memorandum line of the check, given the other circumstances of this case, does not support the conclusion that husband intended the check to be a gift to Zach by clear and convincing evidence. Because the record does not support the conclusion that husband intended to gift this $10,000 to his son, we need not address the other elements of an *inter vivos* gift. For all of these reasons, we find that the circuit court erred in ruling that the $10,000 check made payable to wife and deposited into her account was a gift to Zach.

---

[7] The circuit court never expressly found that husband intended to make a gift of the $10,000 to Zach. However, to arrive at the conclusion that the check was a gift, the circuit court must have implicitly found that husband had the donative intent to make the gift.

- 15 -

## E.  Attorney's Fees

Husband requests that he be awarded attorney's fees incurred in the circuit court as well as appellate attorney's fees "in accordance with the Agreement."  We decline husband's requests because the Agreement does not provide a basis for an award of attorney's fees to husband.  The Agreement states, in relevant part:

> The parties further agree that in the event either party violates or defaults under the provisions of this Agreement, the violating or defaulting party shall be liable for all expenses incurred by the other party in connection with the enforcement of this Agreement, including, but not limited to, all legal fees, court costs, and travel expenses.

Although husband was successful in this appeal, neither the appeal nor the underlying litigation concerned *wife's* violation or default of the provisions of the Agreement.  Furthermore, given the terms of the Agreement, it does not require an award of attorney's fees because of a finding on appeal that husband did not violate the Agreement.  For these reasons, there is no basis to award husband attorney's fees under the Agreement.  We also find no evidence in the record that husband even requested attorney's fees before the circuit court.  In addition, because we reverse the decision of the circuit court, we also deny wife's request for appellate attorney's fees.

## III. CONCLUSION

In summary, this Court has jurisdiction to hear this appeal because husband is – unsurprisingly – not appealing the circuit court's ruling that he was not in contempt.  To the contrary, he is appealing the circuit court's award of $10,000 (as the alleged remaining portion of a $100,000 equitable distribution lump sum payment), made pursuant to the circuit court's continuing authority under Code §§ 20-107.3(K) and 20-109.1 to effectuate and enforce divorce decrees and the separation agreements incorporated into divorce decrees.  We also conclude that the petition and affidavit for rule to show cause was sufficient to provide husband with notice that wife was seeking

enforcement of the Agreement and final divorce decree because wife did not only ask that husband "be held in contempt." She also asked that husband be "compelled to comply with this Court's orders" – after describing the court's order to pay wife $100,000 in an equitable distribution lump sum payment by March 1, 2017 (within six months of the entry of the final divorce decree), which wife alleged husband failed to do.

However, the record does not support the circuit court's conclusion that the January 27, 2017 $10,000 check *made payable to wife* – and deposited by husband into an account belonging to wife (and husband's ex-mother-in-law) – was a gift to their son, Zach. Wife was required to prove each element of a gift by clear and convincing evidence, and she simply failed to meet her burden with respect to husband's donative intent. We, therefore, reverse the circuit court and vacate its order that finds the January 27, 2017 payment to wife to be a gift to their son Zach and that requires husband to pay wife another $10,000 within 60 days. We remand the matter back to the circuit court for entry of any additional necessary orders consistent with this opinion.

<u>Reversed and remanded.</u>