COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Senior Judge Annunziata
Argued in Alexandria, Virginia

**PUBLISHED**

ARTHUR G. KAHN

v.        Record No. 0982-16-4

EILEEN McNICHOLAS

OPINION BY
JUDGE TERESA M. CHAFIN
JANUARY 31, 2017

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDIRA
Nolan B. Dawkins, Judge

Arthur G. Kahn, *pro se*.

Amir Raminpour (Sandground, West, Silek & Raminpour, PLC, on
brief), for appellee.


On June 8, 2016, the Circuit Court of the City of Alexandria held Arthur G. Kahn in

contempt of court for failing to pay his ex-wife, Eileen McNicholas, a sum of money pursuant to

the terms of the Separation and Property Settlement Agreement ("PSA") incorporated into the

parties' final decree of divorce.  On appeal, Kahn argues that the circuit court did not have the

authority to enforce the payment of the monetary awards at issue through its contempt power.

Kahn also contends that the circuit court erred by refusing to impose sanctions against

McNicholas and her attorney based on their misrepresentation that the divorce decree ordered

Kahn to pay spousal support.  For the reasons that follow, we affirm the circuit court's decision.

## I.  BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  In the present case,

however, most of the relevant facts are undisputed.

Kahn and McNicholas were married on December 6, 2002, and they mutually and voluntarily separated with the intent to end their marriage on August 6, 2013. The parties entered into the aforementioned PSA on March 3, 2014, in anticipation of their divorce. Kahn, a licensed practicing attorney, drafted the agreement. The PSA divided the parties' marital property and addressed their future spousal support obligations.[1]

Sections 2, 3, and 4 of the PSA are pertinent to this appeal. Section 2 of the PSA, entitled "Lump Sum Payment," established one of the monthly payment obligations underlying the contempt finding at issue in this case. That section stated, "Husband and Wife agree that Wife shall be paid a lump sum of forty thousand dollars ($40,000.00) in 16 equal monthly payments of two thousand five hundred dollars ($2,500.00), beginning September 2013 and ending with husband's last monthly payment in December 2014."

In Section 3 of the PSA, entitled "Alimony," both parties waived their right to receive future alimony or spousal support payments. Section 3 of the PSA stated:

> Husband and Wife hereby release and relinquish any and all right to alimony or support which he or she may have from the other as a result of this marriage, and each of them hereby expressly acknowledges that he or she understands that the waiver of alimony, as herein provided, constitutes an irrevocable waiver of all support rights he or she might have from the other, and that he or she can never again look to the other for support.

Section 4 of the PSA created an additional monthly payment obligation pertinent to the contempt finding at issue. That section provided that, "In addition to the aforesaid [lump sum] payment, Husband agrees to pay Wife's health insurance and car insurance premiums in their present amount for the period ending December 31, 2014, at which time Husband will terminate said payments."

---

[1] No children were born of the marriage.

The circuit court entered a final decree granting the parties a divorce on May 29, 2014. Like the PSA, the final decree of divorce was drafted by Kahn. The final decree expressly affirmed and ratified the parties' PSA, and incorporated that agreement into the order. In a section entitled "Notices to Parties Pursuant to Virginia Code § 20-107.1(H)," the final decree contained the following provision pertaining to the parties' spousal support obligations:

> The amount of *periodic support* expressed in fixed sums, along with the payment interval, the date payments are due, and the date the first payment is due are as follows:
>
> The current amount of . . . *periodic spousal support* is as follows:
>
> Periodic Support:    $2,500
>
> Payment Interval:    Monthly
>
> Payment Due Date:    15th day of the month
>
> First Payment Due:    September 15, 2013
>
> Last Payment Due:    December 15, 2014

(Emphasis added). This section of the final decree also specified that no support arrearages existed when the order was entered, and set forth the method by which support payments would be credited in the event of an arrearage. Additionally, this section stated that any unpaid support obligations created judgments by operation of law as they became due, and noted that Kahn had an additional obligation to maintain medical and dental insurance for McNicholas until December 31, 2014.[2] Both parties endorsed the final decree without objection.

Kahn complied with the terms of the parties' PSA and their final decree of divorce for ten months. He paid McNicholas the monthly installments on the lump sum payment and

---

[2] We note that this section of the final decree of divorce referenced medical and dental insurance premiums, whereas the PSA referenced medical and car insurance premiums. Kahn's failure to reimburse McNicholas for car insurance premiums is not at issue on appeal.

- 3 -

reimbursed her for her health and dental insurance premiums from September 2013 until June 2014. He also paid McNicholas $2,700 in January 2015. Kahn, however, failed to pay McNicholas monthly payments or reimburse her for her insurance premiums from July 2014 through December 2014. Kahn refused to make these payments because he claimed that McNicholas's prior adultery invalidated the PSA.

On October 6, 2015, McNicholas filed a petition requesting the circuit court to enforce the parties' final divorce decree. The petition alleged that Kahn had failed to reimburse McNicholas for her insurance premiums and make six of the monthly payments required by the PSA and divorce decree, resulting in an arrearage of $13,488. Notably, however, the petition referred to Kahn's payment obligations as "periodic spousal support." The petition requested the circuit court to issue a rule to show cause requiring Kahn to appear and explain his failure to comply with the court's order. The petition also requested the circuit court to hold Kahn in contempt of court for his noncompliance, and award McNicholas the attorney's fees and costs associated with the actions required to enforce the order.

The circuit court issued a rule to show cause commanding Kahn to appear and explain why he should not be held in contempt of court and fined or imprisoned for his failure to comply with the parties' final decree of divorce. While Kahn admitted that he had failed to make the payments at issue in McNicholas's petition, he argued that the circuit court could not enforce the payments specified in the parties' PSA through its contempt power. Kahn claimed that the circuit court could only use its contempt power to enforce the payment of spousal or child support obligations. Although McNicholas's petition referred to Kahn's payment obligations as "spousal support," Kahn noted that McNicholas unambiguously waived her right to receive spousal support payments in the PSA. Thus, Kahn maintained that the payments at issue could

not be considered spousal support payments, and therefore, they could not be enforced through contempt proceedings.

The circuit court disagreed with Kahn's argument and found the evidence presented sufficient to hold him in contempt of court. The circuit court deferred entering an order to that effect, however, to give Kahn an opportunity to pay the arrearage. In an order entered on November 25, 2015, the circuit court continued the matter until December 23, 2015, to allow Kahn the opportunity "to pay $13,488.00 and an additional $1,000.00 in attorney's fees" to McNicholas. The order then expressly stated that Kahn would be held in contempt of court if he failed to make the payment before December 23, 2015. The circuit court's order did not characterize Kahn's payment obligations as "spousal support" or "alimony."

On December 1, 2015, Kahn filed a notice of appeal pertaining to the November 25, 2015 order. This Court dismissed the appeal on May 12, 2016, because the November 25, 2015 order was not a final decision. See Kahn v. McNicholas, No. 1974-15-4 (Va. Ct. App. May 12, 2016). On May 31, 2016, McNicholas filed a motion in the circuit court requesting that Kahn be held in contempt of court for failing to comply with the November 25, 2015 order and the parties' final decree of divorce.

Although Kahn admitted that he had failed to pay McNicholas any portion of the $14,488 that he was ordered to pay in the November 25, 2015 order, Kahn argued that the order and the underlying rule to show cause should be vacated because McNicholas and her attorney intentionally misrepresented that the payment obligations at issue were spousal support rather than monetary awards. Citing Brown v. Brown, 5 Va. App. 238, 246, 361 S.E.2d 364, 368 (1987), Kahn argued that monetary awards such as the payment obligations at issue in this case were "the equivalent of [money judgments] and must be satisfied as such." As the payment obligations at issue could only be enforced in the same manner as money judgments, Kahn

contended that the circuit court "lacked authority to order mandatory payment subject to enforcement by its contempt powers." Id. at 247, 361 S.E.2d at 369. Kahn also requested the circuit court to impose sanctions against McNicholas and her attorney in the amount of $15,000.

McNicholas admitted that she was not entitled to receive alimony or spousal support under the terms of the parties' PSA.[3] She explained, however, that her use of the term "spousal support" in the petition for the rule to show cause was scrivener's error attributable to Kahn's use of that term in the parties' final decree of divorce. Regardless of whether Kahn's payment obligations were characterized as spousal support or monetary awards, McNicholas maintained that the circuit court could enforce the terms of its final decree incorporating the parties' PSA through its contempt power.

The circuit court held Kahn in contempt of court for his willful failure to pay McNicholas $14,488 pursuant to the November 25, 2015 order and the parties' final decree of divorce. Although the circuit court imposed a ten-day jail sentence, that sentence was conditioned on Kahn's failure to make the payment to McNicholas within thirty days. After the circuit court held Kahn in contempt, Kahn responded that he would not make the payment due to a promise that he made to his father and because he lacked adequate financial resources at the time.[4] This appeal followed.

## II. ANALYSIS

On appeal, Kahn contends that the circuit court erred by holding him in contempt of court. Based on Brown, Kahn argues that the monetary awards at issue in the present case could

---

[3] McNicholas actually made these admissions in the brief she filed in response to Kahn's appeal of the November 25, 2015 order. Kahn quoted these admissions in the written pleadings he filed with the circuit court, and emphasized them in his oral argument before the circuit court by quoting sections of the brief.

[4] The record does not establish whether or not Kahn was actually incarcerated for his failure to make the payments at issue.

not be enforced through the circuit court's contempt power. He also contends that the circuit court erred by failing to dismiss the rule to show cause issued against him and impose sanctions against McNicholas and her attorney based on their intentional misrepresentations regarding the nature of the payment obligations at issue in this case. We disagree with both of Kahn's arguments.

### A. THE CIRCUIT COURT DID NOT ERR BY HOLDING KAHN IN CONTEMPT OF COURT BASED ON HIS FAILURE TO COMPLY WITH THE NOVEMBER 25, 2015 ORDER AND THE FINAL DECREE OF DIVORCE

"Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute." Epps v. Commonwealth, 47 Va. App. 687, 708, 626 S.E.2d 912, 921 (2006) (*en banc*) (quoting Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 7 (1986)). "Any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt." Carter, 2 Va. App. at 396, 345 S.E.2d at 7-8.

> The power to punish for contempt is inherent in, and as ancient as, courts themselves. It is essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees, and to preserve the confidence and respect of the people without which the rights of the people cannot be maintained and enforced.

Id. at 395, 345 S.E.2d at 7 (quoting In re Chadwick, 67 N.W. 1071, 1072 (1896)). "A court has discretion in the exercise of its contempt power." Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007). "[T]hus[,] we review the exercise of a court's contempt power under an abuse of discretion standard." Id.

In the present case, the PSA incorporated into the parties' final decree of divorce clearly required Kahn to pay McNicholas a lump sum of $40,000. Pursuant to the PSA, Kahn was obligated to make monthly payments of $2,500 to McNicholas until he had paid her the entire

$40,000.  The PSA also required Kahn to reimburse McNicholas for her medical insurance premiums.

Kahn did not contest that he failed to pay McNicholas pursuant to their PSA during the contempt proceedings in the circuit court, and he does not do so on appeal.  Rather, Kahn maintains that the circuit court lacked the authority to enforce the payment obligations set forth in the PSA through its contempt power due to the nature of the obligations.  As the payment obligations constituted monetary awards instead of spousal support, Kahn contends that the obligations could only be enforced as money judgments.  Kahn's argument is misplaced.

Monetary awards that arise in the context of a divorce differ from other monetary judgments.  They compensate a party for his or her rights, equities, and interests in marital property.  When a monetary award is included in a separation or property settlement agreement, it oftentimes also provides compensation for the waiver of a party's right to receive spousal support.  In light of this unique context, two statutes addressing the consequences of the dissolution of a marriage, Code §§ 20-109.1 and 20-107.3, provide circuit courts with the authority to enforce monetary awards through their contempt power.[5]

Code § 20-109.1 addresses the "[a]ffirmation, ratification and incorporation" of the terms of a separation or property settlement agreement into a decree of divorce.  That statute states, in pertinent part:

> Any court may affirm, ratify and incorporate by reference in its . . . decree of divorce . . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children, *or establishing or imposing any other condition or consideration, monetary or nonmonetary*.

---

[5] While the circuit court did not specifically address Code §§ 20-109.1 and 20-107.3, we note that issues involving statutory construction are reviewed *de novo* on appeal.  See Virginia Dep't of Health v. Kepa, Inc., 289 Va. 131, 139, 766 S.E.2d 884, 888 (2015).

> . . . Where the court affirms, ratifies and incorporates by reference
> in its decree such agreement or provision thereof, *it shall be
> deemed for all purposes to be a term of the decree, and
> enforceable in the same manner as any provision of such decree.*

Code § 20-109.1 (emphasis added).

"The purpose of [Code § 20-109.1] is to facilitate enforcement of the terms of an incorporated agreement by the contempt power of the court." Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 866-67 (1975); see also Smith v. Smith, 41 Va. App. 742, 747, 589 S.E.2d 439, 441 (2003). "When a marriage fails, public policy favors prompt resolution of disputes concerning . . . the property rights of the parties." Morris, 216 Va. at 459, 219 S.E.2d at 867. By ensuring that incorporated agreements are enforceable through the circuit court's contempt power, Code § 20-109.1 promotes that policy by encouraging parties to divide their assets through "[v]oluntary, court-approved agreements." Id.

In the present case, the parties' PSA was expressly affirmed, ratified, and incorporated into their final decree of divorce. Therefore, it was enforceable in the same manner as any other provision contained in a final divorce decree. Accordingly, the circuit court could enforce the terms of the PSA through its contempt power pursuant to Code § 20-109.1.

Alternatively, the circuit court could have enforced its final decree of divorce pursuant to Code § 20-107.3. Code § 20-107.3 provides the statutory framework regarding the equitable distribution of the property and debts of divorcing parties. Code § 20-107.3(D) allows circuit courts to grant monetary awards to either party based on "the equities and the rights and interests of each party in the marital property," and other factors listed in another subsection of the statute. Notably, Code § 20-107.3(D) specifically provides that a monetary award "entered pursuant to

this subsection shall constitute a judgment within the meaning of [Code] § 8.01-426 and . . . may

be enforceable in the same manner as any other money judgment."[6]

While Code § 20-107.3(D) allows monetary awards to be enforced as monetary

judgments, Code § 20-107.3(K)(2) provides another method of enforcement. That subsection

states, in pertinent part, that:

> The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, *including the authority to . . . [p]unish as contempt of court any willful failure of a party to comply with the provisions of any order made by the court under this section . . . .*

Code § 20-107.3(K)(2). Accordingly, Code § 20-107.3(K)(2) provides additional statutory

support for the enforcement of monetary awards through the circuit court's contempt power. See

also Code § 20-115 (expressly allowing the circuit court to order the incarceration of a

contemnor for his or her willful failure or refusal to comply with any order entered pursuant to

Code § 20-107.3).

Despite the statutory authorization for the enforcement of monetary awards through the

circuit court's contempt power contained in Code §§ 20-109.1 and 20-107.3, Kahn maintains that

monetary awards are only enforceable as money judgments. He bases this argument on Brown.

In Brown, this Court noted that:

> A distinct difference . . . exists between a spousal support award and a monetary award made pursuant to Code § 20-107.3. Spousal support involves a legal duty flowing from one spouse to the other by virtue of the marital relationship. By contrast, a monetary award does not flow from any legal duty, but involves an

---

[6] Code § 8.01-426 states, in pertinent part: "A decree . . . requiring the payment of money, shall have the effect of a judgment for . . . money, and be embraced by the word 'judgment,' where used in this chapter or in Chapters 18, 19 or 20 of this title or in Title 43."

- 10 -

adjustment of the equities, rights and interests of the parties in
marital property.

Brown, 5 Va. App. at 246, 361 S.E.2d at 368.

Based on this distinction, this Court held that "to the extent a decree awards a monetary

sum pursuant to Code § 20-107.3(D), it is the equivalent of a money judgment *and must be*

*satisfied as such.*" Id. (emphasis added). Although this Court explained that the circuit court

was authorized to fix a date upon which the monetary award at issue was due and payable, it

determined that the circuit court lacked authority to order mandatory payment of the monetary

award "subject to enforcement by its contempt powers." Id. at 247, 361 S.E.2d at 369.

The Brown decision predates the express statutory authority permitting the enforcement

of equitable distribution decisions through the circuit court's contempt power provided in Code

§ 20-107.3(K). While this Court decided Brown in 1987, subsection (K) was added to Code

§ 20-107.3 in 1991. See 1991 Va. Acts 698.

Moreover, the holding in Brown upon which Kahn relies has been superseded by an

amendment to Code § 20-107.3(D), the subsection of the statute addressing monetary awards. In

2010, the General Assembly amended Code § 20-107.3 by adding the following sentence to

subsection (D): "An award entered pursuant to this subsection *may* be enforceable in the same

manner as any other money judgment." See Code § 20-107.3(D) (emphasis added); 2010 Va.

Acts 506. The inclusion of the permissive term "may" in the amendment overruled the holding

in Brown at issue in this case.[7] While Brown held that a monetary award *must* be enforced in the

---

[7] Although the legislation from the House of Delegates introducing the amendment
originally stated "An award entered pursuant to this subsection *shall* be enforceable in the same
manner as any other money judgment[,]" see H.B. 377, 2010 Gen. Assemb., Reg. Sess. (Va. Jan.
12, 2010) (emphasis added), the legislation was amended by the Senate to strike the term "shall"
and insert the term "may," see H.B. 377, 2010 Gen. Assemb., Reg. Sess. (Va. March 13, 2010).
The House of Delegates then unanimously agreed to the Senate's amendment, and Code
§ 20-107.3(D) was amended to state that "An award entered pursuant to this subsection *may* be

- 11 -

same manner as a money judgment, Code § 20-107.3(D) states that a monetary award *may* be enforced in the same manner as a money judgment. Thus, as amended, Code § 20-107.3 allows monetary awards to be enforced as money judgments or through any other method provided by the statute, including enforcement through the circuit court's contempt power pursuant to Code § 20-107.3(K)(2).

Although Kahn also cites <u>Brown</u> for the proposition that a monetary award is materially different than a spousal support obligation, we note that spousal support obligations are enforced in a similar manner to monetary awards. Spousal support obligations may be enforced through the court's contempt power. <u>See, e.g.</u>, Code § 20-115; <u>West v. West</u>, 126 Va. 696, 700, 101 S.E. 876, 878 (1920). Such obligations, however, also create judgments by operation of law as they become due and unpaid, and may be enforced by any proceeding generally available to enforce money judgments. <u>See</u> Code § 20-78.2; <u>Adcock v. Commonwealth ex rel. Houchens</u>, 282 Va. 383, 388-89, 719 S.E.2d 304, 307-08 (2011). Similarly, child support obligations may be enforced through contempt proceedings or as money judgments as they become due and unpaid. <u>See, e.g.</u>, Code §§ 20-115, 20-78.2; <u>Adcock</u>, 282 Va. at 388-89, 719 S.E.2d at 307-08.

Pursuant to Code §§ 20-109.1 and 20-107.3, the circuit court could enforce the terms of the PSA incorporated into the parties' final decree of divorce by holding Kahn in contempt of court. As aptly stated by the Supreme Court in 1926, "Courts are invested with the power and charged with the duty of enforcing their decrees. Such decrees are the mandates of the law, and courts must have the power of enforcing them, if organized society is to be maintained." <u>Branch v. Branch</u>, 144 Va. 244, 251-52, 132 S.E. 303, 305-06 (1926). In the present case, Kahn was not

enforceable in the same manner as any other money judgment." <u>See</u> 2010 Va. Acts. 506. This legislative history illustrates that the General Assembly expressly intended to use the permissive term "may" in the 2010 amendment to Code § 20-107.3(D), and thereby allow monetary awards to be enforced as monetary judgments or through other methods.

- 12 -

held in contempt "simply to enforce the payment of the money, but to punish for the willful disobedience of a proper order of a court of competent jurisdiction." Id. at 251, 132 S.E.2d at 305 (quoting West, 126 Va. at 699, 101 S.E. at 877).

In summary, we conclude that the circuit court did not err by holding Kahn in contempt of court for his willful failure to comply with the November 25, 2015 order and the payment obligations set forth in the parties' PSA and incorporated into their final decree of divorce. The circuit court was entitled to enforce the payment obligations through its contempt power under both Code §§ 20-109.1 and 20-107.3.[8]

## B. THE CIRCUIT COURT DID NOT ERR BY REFUSING TO DISMISS THE RULE TO SHOW CAUSE AND IMPOSE SANCTIONS BASED ON THE ALLEGED MISREPRESENTATIONS OF McNICHOLAS AND HER ATTORNEY

In his second assignment of error, Kahn contends that the circuit court erred by failing to dismiss the rule to show cause issued against him and impose sanctions on McNicholas and her attorney based on their misrepresentations concerning the nature of the payment obligations at issue in this case. Kahn argues that McNicholas and her attorney intentionally misrepresented that the payment obligations at issue were spousal support rather than monetary awards. As Kahn was not obligated to pay spousal support to McNicholas pursuant to the parties' PSA, Kahn claims that the circuit court should have dismissed the rule to show cause issued against him and imposed sanctions pursuant to Code § 8.01-271.1. We disagree.

---

[8] We note that this Court previously held that monetary awards may be enforced through a circuit court's contempt power in at least two unpublished opinions: Custis v. Custis, No. 2899-07-1, 2008 Va. App. LEXIS 275 (Va. Ct. App. June 10, 2008), and Knott v. Painter, No. 0983-97-4, 1998 Va. App. LEXIS 231 (Va. Ct. App. Apr. 21, 1998). While these unpublished decisions have no precedential value, we cite them here as informative decisions pursuant to Rule 5A:1(f).

Additionally, we note that this Court addressed the use of a circuit court's contempt power to enforce a provision in a property settlement agreement incorporated into a final decree of divorce that required a party to provide health insurance to his former spouse in McCoy v. McCoy, 55 Va. App. 524, 687 S.E.2d 82 (2010).

Code § 8.01-271.1 states, in pertinent part, that "[t]he signature of an attorney or party [on a pleading, motion or other paper] constitutes a certificate by him that (i) he has read the pleading, motion, or other paper [and] (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact . . . ." Code § 8.01-271.1 allows the circuit court to impose sanctions on an attorney or party who signs a pleading in violation of this rule.

> In reviewing a trial court's [decision regarding the imposition of] sanctions under Code § 8.01-271.1, we apply an abuse of discretion standard. In applying that standard, we use an objective standard of reasonableness in determining whether a litigant and his attorney, after reasonable inquiry, could have formed a reasonable belief that the pleading was well grounded in fact . . . .

Flippo v. CSC Assocs. III, 262 Va. 48, 65-66, 547 S.E.2d 216, 227 (2001).

Under the circumstances of this case, we conclude that the circuit court did not abuse its discretion by refusing to dismiss the rule to show cause issued against Kahn and impose sanctions on McNicholas and her attorney based on their characterization of the payment obligations. When viewed with the terms of the parties' final decree of divorce, McNicholas's description of the payment obligations as spousal support was not unreasonable.

Initially, we note that the use of the term "spousal support" in McNicholas's petition did not prejudice Kahn. While the petition erroneously referred to "spousal support" rather than a "monetary award," it clearly identified the payment obligations that McNicholas requested the circuit court to enforce.[9] It stated that Kahn was obligated to pay McNicholas $2,500 per month from September 15, 2013, through December 15, 2014, pursuant to the parties' final decree of divorce. It also stated that Kahn was responsible for the payment of McNicholas's medical

_____

[9] Unlike McNicholas's petition, the rule to show cause issued by the circuit court did not refer to the payment obligations at issue as "spousal support." It simply commanded Kahn to appear and explain his failure to comply with the terms of the parties' final decree of divorce.

- 14 -

insurance premiums pursuant to the same order. The petition then claimed that Kahn failed to make the required payments for six months, and requested the circuit court to enforce the terms of the parties' final decree of divorce by ordering Kahn to make the payments. These allegations provided enough information to enable Kahn to file detailed written responses opposing them and reasoned argument in two hearings before the circuit court.

Furthermore, we find that McNicholas's use of the term "spousal support" in her petition was consistent with the language of the parties' final decree of divorce. Although Kahn and McNicholas expressly waived any rights to receive alimony or spousal support in their PSA, their final decree of divorce described Kahn's payment obligations as "spousal support." Specifically, the final decree referred to Kahn's payment obligations as "spousal support" throughout the section of the order setting forth the notices required by various statutes.[10] Based on these references, McNicholas's use of the term "spousal support" to describe Kahn's payment obligations could be viewed as an attempt to maintain consistency with the final decree of divorce rather than an intentional misrepresentation designed to mislead the circuit court.

McNicholas's conduct throughout the litigation also supports the conclusion that her misrepresentations were not intentional. McNicholas explained that the reference to the payment obligations as "spousal support" was an error arising from the use of that term in the parties' final decree of divorce. McNicholas then expressly clarified that she was not entitled to receive alimony or spousal support payments under the terms of the PSA or the parties' divorce decree. Throughout the proceedings, McNicholas consistently argued that Kahn should have been held in contempt of court for his failure to make the payments required by the PSA incorporated into

_____

[10] We acknowledge that Kahn explained that he described his payment obligations as "spousal support" because he relied on a form obtained from a circuit court law clerk to draft the final divorce decree. We also note, however, that Kahn was a licensed attorney who chose to undertake the drafting of the decree at issue and represent himself in this matter.

- 15 -

the parties' final decree of divorce, regardless of whether they were referred to as "spousal support" or a "lump sum" monetary award.

Given the ambiguity created by the characterization of the payment obligations as "spousal support" in the final decree of divorce drafted by Kahn, McNicholas's erroneous use of the term "spousal support" in her petition was reasonable. "[T]here is nothing in Code § 8.01-271.1 that gives a trial judge authority to impose monetary sanctions . . . [for] an inadvertent mistake." Ragland v. Soggin, 291 Va. 282, 292, 784 S.E.2d 698, 703 (2016). As the characterization of the payment obligations as spousal support was grounded in the terms of the parties' final decree of divorce, McNicholas consistently acknowledged that the reference to the payment obligations as spousal support was in error, and Kahn was not prejudiced by the mistake, we conclude that the circuit court did not err by refusing to dismiss the rule to show cause or impose sanctions against McNicholas and her attorney based on their characterization of the payment obligations at issue in this case.

### III. CONCLUSION

In summary, we hold that the monetary awards set forth in the parties' PSA and incorporated into their final decree of divorce were enforceable through the circuit court's contempt power pursuant to Code §§ 20-109.1 and 20-107.3. Accordingly, we conclude that the circuit court did not err by holding Kahn in contempt of court for his willful failure to comply with its November 25, 2015 order and the terms of the parties' PSA as incorporated into their final decree of divorce. Additionally, we conclude that the circuit court did not err by refusing to dismiss the rule to show cause issued against Kahn and impose sanctions against McNicholas and her attorney based on their characterization of the payment obligations at issue in this case. For these reasons, we affirm the circuit court's decision.

Affirmed.