COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Humphreys and O'Brien
Argued via videoconference

UNPUBLISHED

ROBERT LEO CLAVIN

                                        MEMORANDUM OPINION* BY
v.        Record No. 1324-20-2           JUDGE MARY GRACE O'BRIEN
                                             JULY 6, 2021
DARLENE GIBSON CLAVIN


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Sarah J. Conner (Rick A. Friedman; II; Lindsay G. Dugan; Friedman
Law Firm, P.C., on briefs), for appellant.

Brandy M. Poss (Barnes & Diehl, P.C., on brief), for appellee.


Robert Leo Clavin ("husband") appeals an order denying his motion to amend spousal

support to Darlene Gibson Clavin ("wife") and finding him in contempt for violating provisions of

the parties' divorce decree.  He also appeals an award of attorneys' fees to wife.

BACKGROUND

The parties married in April 1998, and wife filed for divorce in May 2017.  After a 2018

trial, the court issued a letter opinion that adopted the parties' agreement concerning the division of

certain items of personal property and addressed other contested issues, including equitable

distribution and support.  A final divorce decree was entered in July 2019, and neither party

appealed.

At all times relevant to the divorce and this appeal, husband has been the president of a

home building business that he founded with a colleague, William White.  The business operates

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

under White's Class A contractor's license, and White receives twenty-five percent of the net profits. Husband, who is the only employee, pays himself from the remaining net profits. The divorce decree reflected that husband's annual income was $74,777 and that wife earned $34,000 per year as an administrative assistant. Husband was ordered to pay $2,000 per month in spousal support beginning April 1, 2019, and to pay $25,000 of wife's $52,248.17 attorneys' fees.

Wife requested a rule to show cause in August 2019, alleging that husband failed to pay spousal support in May, June, and July 2019. In October 2019, wife again petitioned for a show cause rule, alleging that husband did not pay spousal support on time in August, September, and October 2019. The court found husband in contempt on November 22, 2019.

In December 2019, husband moved to reduce spousal support, but no action was taken on his motion at that time. Wife requested a third show cause rule in August 2020, alleging that husband had not paid any spousal support since April 2020. The petition also addressed husband's failure to return items of property and pay her a fifty-percent share of the marital vehicles, as ordered in the divorce decree.

On September 16, 2020, the court heard husband's motion to reduce spousal support and wife's show cause rule. Husband attempted to show that although the divorce decree reflected that his annual income was $74,777, his 2019 income was $61,200. He estimated that he would earn "roughly $51,000" in 2020. Husband testified that his income decreased because the COVID-19 pandemic stalled construction projects and he had difficulty acquiring building loans because of his debts, including his monthly spousal support obligation. Husband anticipated finishing two construction projects by the end of 2020 that would earn gross revenues of $15,000 and $20,000, respectively. He also had a potential third project, pending financing.

Husband acknowledged that in May 2020 his company received a forgivable loan from the federal government's COVID-19 relief legislation for $15,514 "to make payroll." He stated that

because he is the only person on the company's payroll, the loan "is for me." Although husband claimed that he paid himself from loan proceeds, he produced no supporting documentation in discovery or at trial. To the contrary, other evidence indicated that although he paid himself an average of $3,887 per month leading up to entry of the divorce decree, he only paid himself $2,820 per month afterwards, even after his company received the payroll loan.

Husband testified about his efforts to find additional work. He claimed that he was pursuing a license to perform home inspections, and he stated that he had approached other contractors who were a "little bit older, retirement age . . . about maybe . . . let[ting him] do some of the leg work for them." However, he admitted that he had not actually applied for other employment.

Wife testified that her annual salary had increased from $34,000 at the time of the divorce to $45,000 plus commissions, estimated at $219 per month. Due to medical issues, wife is unable to obtain any further promotions. Although wife has multiple bank accounts and investments, she received many of these assets in equitable distribution. Wife also testified that her financial advisor told her that based on her age, she should not use her retirement savings because those funds would last her four years if she was "lucky."

Wife purchased a house in April 2020 because her landlord was selling the condominium she had been renting. Wife used $36,000 of the $53,000 she received from the sale of the marital residence for her down payment, and her monthly mortgage payment is $52 more than her prior rent. She testified that the house needs significant repairs, and she listed those anticipated expenses of $600 per month on her income and expense sheet admitted at trial. Wife explained that although the house needs repairs, it had taken her several months to find affordable, safe housing. In total, her monthly expenses increased by $315 after the divorce.

Husband stipulated that he did not pay spousal support for the six months from April 2020 to September 2020, resulting in a $12,000 arrearage. However, he argued that his noncompliance

was not willful, but instead due to his financial inability to pay. Husband admitted that he sued wife in general district court seeking to recover $25,000 he spent while investigating her alleged use of a credit card, resulting in marital debt. The debt was previously addressed in the divorce decree.

Regarding his failure to return personal property, husband stated that he did not have the items. In the divorce decree, the court had ruled that a Yamaha dirt bike was wife's separate property. The parties' agreement, also contained in the divorce decree, specifically had stated that four other items of personal property were "awarded" to wife: a "Simpson Professional 3200 PSI pressure washer"; a "Dewalt 4.5 Gallon Portable Electric Horizon Air Compressor"; a "Dewalt cordless drill" with accessories; and a battery charger. Husband testified that he returned the "only power-washer I've ever owned" and knew nothing about the "Simpson one." Likewise, husband stated that he already returned an air compressor and did not have the other items. He testified that he did not know the location of the Yamaha dirt bike, which he claimed belonged to his son.

At the conclusion of the evidence, the court determined that although husband had shown a material change in circumstances, the change did not warrant a reduction in spousal support. Despite husband's assertion that his income had decreased significantly, the court characterized his testimony as "fishy" and "less than credible" and stated that "there is manipulation going on." The court noted that despite claiming an inability to pay spousal support, husband spent $25,000 to investigate wife's alleged use of a credit card. The court stated that husband "has decided he is going to do what he wants to do, and nothing else, and has acted accordingly." The court found husband in contempt for failure to pay spousal support and ordered him to pay $1,000 per month toward the $12,000 arrearage.

The court also found husband in contempt for failing to return the dirt bike and the four other items of property to wife. The court further determined that husband failed to pay wife

$1,498.71, her share of the marital vehicles. The court directed husband to return the property to wife and pay her $1,498.71 by December 31, 2020.

Finally, the court ordered husband to pay wife's attorneys' fees of $17,275.44 "according to the following schedule: . . . $5,000 directly to [wife] by December 31, 2020 and . . . the remainder ($12,275.44) by December 31, 2021." The court ruled that if husband did not pay the requisite amount of attorneys' fees and wife's share of the marital vehicles by December 31, 2020, he would serve twelve months of incarceration, with nine months suspended for three years. Husband filed written objections to the order but did not seek reconsideration. He subsequently noted his appeal.

ANALYSIS

Husband initially asserted seventeen assignments of error but withdrew four at oral argument.[1] The remaining assignments of error challenge the court's denial of his motion to reduce spousal support, the contempt rulings, and the award of attorneys' fees.

A. Motion to Reduce Spousal Support

In six assignments of error, husband argues that the court erred by not reducing his spousal support obligation for the following reasons: wife's annual salary had increased by $10,000; she did not "establish a need for support"; she "knowingly increased her expenses"; he proved his financial inability to pay because the court found his testimony "regarding issues with his business" to be credible; no evidence supported the court's "implicit finding" that he was underemployed; and the parties' income levels had become relatively similar.

Code § 20-109(A) provides that "[u]pon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance[.]" The party

---

[1] Specifically, he no longer contends that the court erred by failing to identify the materially changed circumstances and failing to specify why those circumstances did not justify a modification of spousal support. He also withdrew assignments of error concerning his failure to return ammunition to wife and the court's sentence for contempt.

- 5 -

seeking modification of support payments must prove "both a material change in circumstances and that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605 (1989). "The material change 'must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay.'" Street v. Street, 25 Va. App. 380, 386 (1997) (*en banc*) (quoting Hollowell v. Hollowell, 6 Va. App. 417, 419 (1988)).

Not every material change in circumstance justifies a modification of spousal support. See Blackburn v. Michael, 30 Va. App. 95, 103 (1999). "A trial court is vested with 'broad discretion in deciding whether a material change in circumstances warrants a modification in the amount of support.'" Driscoll v. Hunter, 59 Va. App. 22, 35 (2011) (quoting Reece v. Reece, 22 Va. App. 368, 373 (1996)).

In an appeal concerning the modification of a spousal support award, "the trial court's findings must be accorded great deference." Moreno v. Moreno, 24 Va. App. 190, 195 (1997). "[T]he appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)). We consider the evidence in the light most favorable to the party prevailing below, and the trial court's determination "will not be disturbed on appeal unless it is plainly wrong or without evidence in the record to support it." Schoenwetter, 8 Va. App. at 605.

Here, the court found a material change in circumstances. However, it determined that husband did not meet his burden to prove that the change warranted a reduction in his spousal support obligation. That decision is not plainly wrong or without supporting evidence. See id.; see also Driscoll, 59 Va. App. at 35. Although the court accepted husband's testimony concerning COVID-19-related slowdowns in the construction industry, it found that he did not make a full and fair disclosure about his finances. Without such evidence, the court could not determine that husband's income had declined. Therefore, husband's contention on appeal that he earned

"between $51,000 and $63,000 annually," and not the $74,777 found in the divorce decree, is not supported by the record and contradicts the court's factual findings.

Husband contends the court erred by implicitly finding him underemployed without evidence of his earning capacity. He argues that it was wife's burden to prove both his earning capacity and her ongoing need for support. Husband misapprehends the burden of proof for a motion to modify spousal support. As the moving party, husband was required to prove that since entry of the prior support award, materially changed circumstances warranted a reduction in his support obligation. See Schoenwetter, 8 Va. App. at 605. He had the burden to establish that his inability to pay was not the result of voluntary underemployment or neglect. See Reece, 22 Va. App. at 373-74; see also Edwards v. Lowry, 232 Va. 110, 112-13 (1986) (noting that a party seeking a reduction in child support must "show that his lack of ability to pay is not due to his own voluntary act or neglect" (quoting Hammers v. Hammers, 216 Va. 30, 31 (1975))).

The court found husband failed to meet his burden, and the record supports this determination. Husband's efforts to seek other employment were inadequate; they merely consisted of trying to obtain a license to perform home inspections and "talk[ing] to a couple other contractors" to take on odd jobs. He did not actually apply for any other job, even after the November 2019 contempt order for defaulting on spousal support. Further, husband controlled his own income through his company's payroll yet gave vague testimony about the payouts he received from the $15,514 federal payroll loan.

It was also husband's burden to prove that wife's need for support had changed, not wife's burden to "establish a need for support." See Floyd v. Floyd, 1 Va. App. 42, 45 (1985) (affirming the denial of a motion to reduce spousal support where a husband failed to prove "a change in his ex-wife's need for such payments"). The court found that husband's evidence did not show that wife's need for support decreased. Despite her salary increase by approximately $10,000 since

- 7 -

entry of the divorce decree, wife still only earned $45,000 per year, which was below the parties' standard of living during the marriage. See id. (stating that spouses "entitled to support have the right to be maintained in the manner to which they were accustomed during the marriage," balanced against the other spouse's ability to pay); see also Gamble v. Gamble, 14 Va. App. 558, 573-74 (1992).

Contrary to husband's contention, wife was not required to deplete her savings accounts or other assets received pursuant to equitable distribution. Cf. Zipf v. Zipf, 8 Va. App. 387, 398-99 (1989) (stating, in the context of an initial spousal support award, that the requesting spouse is not required "to exhaust his or her own estate in order to qualify, relieving the other spouse of all obligation of support until that estate is depleted"). Further, although wife's monthly expenses increased by $315 since entry of the divorce decree, these expenses reflected necessary new housing costs. The record thus supports the court's conclusion that husband failed to prove that her need for support decreased.

The court considered the parties' circumstances at the time of the hearing. It examined wife's need for support and husband's ability to pay, as required by case law. See Street, 25 Va. App. at 386. It found that although the COVID-19 pandemic had affected the construction industry since the prior support order, husband had not met his burden to prove that either his ability to pay or wife's need for support had changed. According deference to the court as factfinder, we find no error in its decision to deny husband's motion to reduce his spousal support obligation.

### B. Contempt

In six other assignments of error, husband challenges the court's contempt rulings. He contends the court erred in finding him in contempt for not paying spousal support because the evidence demonstrated his inability to pay. He also argues that the court erred in finding him in

contempt for not returning items of personal property he did not possess and that the court's order requiring him to return the property "provide[d] relief not properly pled."

### i. Nonpayment of Spousal Support

Husband stipulates that he did not pay the court-ordered support between April 2020 and September 2020; however, he argues that his failure was not willful, but instead due to his inability to pay. "Spousal support obligations may be enforced through the court's contempt power." Kahn v. McNicholas, 67 Va. App. 215, 230 (2017). "[T]o hold a litigant in contempt, the litigant must be 'acting in bad faith or [in] willful disobedience of [the court's] order.'" Koons v. Crane, 72 Va. App. 720, 737 (2021) (alterations in original) (quoting Zedan v. Westheim, 60 Va. App. 556, 574-75 (2012)). "On appellate review of this issue, we may reverse the ruling of the trial court only if we find that it abused its discretion." Id. (quoting Barnhill v. Brooks, 15 Va. App. 696, 704 (1993)).

Before finding husband in contempt, the court considered husband's evidence concerning his motion to reduce spousal support and found that he had not made a full and fair disclosure of his finances. Because husband failed to prove that his ability to pay had changed since entry of the divorce decree, the court denied the motion. Husband acknowledged that his company received a forgivable payroll loan in May 2020, he was the only person on the company's payroll, and he determined whether to issue payroll. Husband also paid $25,000 after the divorce to investigate wife's pre-divorce use of a credit card. Nevertheless, husband paid no spousal support whatsoever from April 2020 to September 2020. Based on our review of the record, we cannot say the court abused its discretion in finding that husband's noncompliance with his support obligation was willful.

ii. Failure to Return Property

Husband contends the court erred in finding him in contempt for failing to return certain items of personal property because they were not in his possession. However, the "law of the case" doctrine precludes husband from asserting errors that, in essence, seek relitigation of the court's equitable distribution rulings in the divorce decree. See Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 26 (2008).

"Pursuant to the 'law of the case' doctrine, when a party fails to challenge a decision rendered by a court at one stage of litigation, that party is deemed to have waived [its] right to challenge that decision during later stages of the 'same litigation.'" Id. The doctrine also applies to "future stages of the same litigation." Id. at 26-27 (quoting Kondaurov v. Kerdasha, 271 Va. 646, 658 (2006)). Here, husband agreed to award wife the Dewalt air compressor, Dewalt cordless drill, Simpson pressure washer, and a battery charger, and the court adopted that agreement in its divorce decree. The court also ruled that the Yamaha dirt bike was wife's separate personal property. Neither party appealed the decree. Thus, the law of the case reflects that husband was required to return the items to wife. See id. at 26 ("The 'law of the case' doctrine applies both to issues that were actually decided by the court, and also to issues 'necessarily involved in the first appeal, whether actually adjudicated or not.'" (quoting Kemp v. Miller, 160 Va. 280, 285 (1933))). Husband cannot avoid the unappealed equitable distribution rulings by now claiming to know nothing about the location of these items. Therefore, we do not reach the merits of these assignments of error. See id. at 28.

Husband also contends that by ordering him to return specific property to wife, the court awarded relief not requested in her pleadings. However, he failed to preserve this issue for appellate review.

Rule 5A:18 states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  The purpose of the contemporaneous objection rule is to give the trial court "an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals."  Cirrito v. Cirrito, 44 Va. App. 287, 314 (2004).  Therefore, this Court does not consider an argument on appeal unless it was presented to the trial court with specificity and in time for the court to correct any error.  See Tackett v. Arlington Cnty. Dep't of Human Servs., 62 Va. App. 296, 331-32 (2013).  "Rule 5A:18 applies to all cases . . . including divorce."  Lee v. Lee, 12 Va. App. 512, 514 (1991) (*en banc*); see, e.g., Zipf, 8 Va. App. at 392.

Husband cites his written objections to the contempt order as preserving the court's purported error of awarding relief not requested in the pleadings.  However, he never raised this contention during the contempt proceedings nor moved for reconsideration based on his written objections, thereby depriving the court of "an opportunity to rule intelligently on the issues presented."  Cirrito, 44 Va. App. at 314.  Because husband did not present this issue to the court with specificity and in time for correction, Rule 5A:18 precludes our review on appeal.

## C.  Attorneys' Fees

Husband argues the court abused its discretion in awarding wife $17,275.44 in attorneys' fees because it "fail[ed] to consider [his] ability to pay."

A court has authority to award attorneys' fees in contempt proceedings to enforce orders relating to spousal support.  See Carswell v. Materson, 224 Va. 329, 332 (1982) ("[C]ourts have the power to award counsel fees incurred in divorce cases where contempt proceedings have to be initiated and conducted to enforce an order of the court."); see also Code § 20-99(6) ("Costs may be awarded to either party as equity and justice may require."); Kotara v. Kotara, 55 Va. App. 705, 709

(2010) (explaining that the statutory term "costs" includes attorneys' fees). "The question of whether to award attorney's fees 'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Cirrito, 44 Va. App. at 299 (quoting Kane v. Szymzak, 41 Va. App. 365, 375 (2003)).

The court heard evidence regarding the parties' respective incomes and needs. It found that husband had not fully disclosed his financial situation and "that there is manipulation going on." The court concluded that husband "has decided he is going to do what he wants to do, and nothing else, and has acted accordingly." Further, although the parties' "relative financial abilities . . . should be considered as factors in weighing the equities[,] . . . these factors are not exclusively determinative of whether an award should or should not be made." Id. at 300. Given husband's pattern of noncompliance, his refusal to pay any amount of spousal support for six months, and his manipulation of assets, we do not find that the court's award of attorneys' fees was an abuse of discretion.

Wife requests an award of the attorneys' fees and costs incurred on appeal. Pursuant to Rule 5A:30, in cases where attorneys' fees are recoverable in domestic relations cases, this Court may award some or all of the fees requested or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(b)(1), (2). Whether to award fees is discretionary. Friedman v. Smith, 68 Va. App. 529, 545-46 (2018). "[T]his Court's decisions regarding attorney's fees and costs are based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" Id. at 546 (quoting Rule 5A:30(b)(3)). See also Rule 5A:30(a) (authorizing taxation of costs against an appellant if a judgment is affirmed).

Husband asserted seventeen assignments of error, nine of which were procedurally defaulted, waived, or withdrawn. He appealed rulings that the contempt order did not make, and he sought to relitigate equitable distribution rulings in the divorce decree that he never appealed. Husband's remaining assignments of error lacked merit.

Accordingly, we find that wife is entitled to her reasonable appellate attorneys' fees and remand the matter to the circuit court for a determination of that amount. See Rule 5A:30(b)(2); Friedman, 68 Va. App. at 545-46. On remand,

> in determining the reasonableness of such an award the circuit court should consider all relevant factors, including but not limited to, the extent to which the party was a prevailing party on the issues, the nature of the issues involved, the time and labor involved, the financial resources of the parties, and the fee customarily charged in the locality for similar legal services.

Rule 5A:30(b)(4). Costs shall be taxed against husband. Rule 5A:30(a).

## CONCLUSION

For the reasons stated above, we find the circuit court did not err in denying husband's motion to reduce spousal support, finding him in contempt for noncompliance with the divorce decree, and awarding attorneys' fees to wife. We also award wife her reasonable attorneys' fees and costs incurred on appeal and remand to the circuit court for the limited purpose of determining that amount.

Affirmed and remanded.